172 P.3d 373 (2007)
STATE of Washington, Respondent,
v.
Mark Patrick KILGORE, Appellant.
No. 34053-4-II.
Court of Appeals of Washington, Division 2.
November 27, 2007.
*374 James Robert Dixon, Dixon & Cannon, Ltd., Seattle, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty. Ofc., Tacoma, WA, for Respondent.

PUBLISHED OPINION
HUNT, J.
¶ 1 Mark P. Kilgore appeals his exceptional 1998 sentences for multiple convictions of child rape and child molestation, which convictions we affirmed in a previous appeal. He argues that (1) when we remanded his case "for further proceedings" following his first appeal, the trial court should have resentenced him and erred in failing to apply Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and (2) the trial court erred on remand when it simply corrected his offender score, ordered his two reversed convictions deleted from his 1998 judgment and sentence, and did not exercise independent judgment to revisit his exceptional sentences for the five affirmed convictions, thus, leaving intact his original 1998 exceptional sentences for those five affirmed convictions.
¶ 2 Citing State v. Barberio, 121 Wash.2d 48, 846 P.2d 519 (1993), the State moves to dismiss Kilgore's appeal because (1) he failed to challenge his exceptional sentences in his first appeal; (2) there was no resentence on remand from which to appeal; and (3) he has previously appealed and we have previously affirmed his remaining five affirmed convictions, which he cannot now appeal a second time. Holding that Barberio controls, we grant the State's motion to dismiss Kilgore's appeal.

FACTS
¶ 3 In 1998, a jury convicted Kilgore of four counts of first degree child molestation and three counts of first degree child rape involving three different victims. The trial court found that the following five aggravating factors justified exceptional sentences on each of the seven counts: (1) Kilgore violated a position of trust; (2) the victims were particularly vulnerable; (3) the convictions involved multiple victims and multiple incidents per victim; (4) Kilgore's conduct manifested deliberate cruelty; and (5) Kilgore showed no remorse. Kilgore's offender score was 18; his standard ranges were 149-198 months for the molestation counts and 210-280 months for the rape counts. On December *375 1, 1998, the trial court imposed concurrent exceptional sentences of 560 months on each count.

I. First Appeal and Remand
¶ 4 Kilgore appealed his seven convictions but not his seven corresponding exceptional sentences. Holding that the trial court erred in suppressing evidence that someone else had previously abused one of Kilgore's victims, we reversed counts I and II (rape and molestation of CM) and remanded "for further proceedings"; we affirmed the remaining five convictions. State v. Kilgore, 107 Wash.App. 160, 178, 190, 26 P.3d 308 (2001), aff'd, 147 Wash.2d 288, 53 P.3d 974 (2002). The Washington Supreme Court accepted review on a single ER 404(b) issue. The Court affirmed our decision. State v. Kilgore, 147 Wash.2d 288, 295, 53 P.3d 974 (2002). On October 7, 2002, the Court filed its mandate and remanded the case to the superior court.
¶ 5 The State did not retry Kilgore on the two reversed counts. Instead, it simply asked the superior court to add appellate costs to the judgment and sentence.[1] On February 7, 2003, the trial court ordered Kilgore to pay appellate costs, the sole focus of the remand hearing.

II. Blakely Decision and Request for Resentencing Hearing
¶ 6 More than a year later, on June 24, 2004, the United States Supreme Court issued Blakely, holding, "`Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Blakely, 542 U.S. at 301, 124 S.Ct. 2531 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Blakely Court further held that the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but rather the maximum a judge may impose without any additional findings. Blakely, 542 U.S. at 303-04, 124 S.Ct. 2531.
¶ 7 The following year, our state Supreme Court held that Blakely does not apply retroactively to cases that were final when Blakely was announced. State v. Evans, 154 Wash.2d 438, 448, 114 P.3d 627, cert. denied, 546 U.S. 983, 126 S.Ct. 560, 163 L.Ed.2d 472 (2005).
¶ 8 At the request of Kilgore's attorney, the trial court scheduled a so-called "resentencing" hearing for October 2005. Kilgore filed a memorandum arguing that he was entitled to receive a standard range sentence under Blakely. The State countered that (1) on remand following Kilgore's direct appeal of his convictions, neither we nor the state Supreme Court had ordered the trial court to resentence Kilgore; (2) elimination of Kilgore's two reversed convictions reduced his offender score from 18 to only 12 and, thus, did not change his standard sentencing range; (3) therefore, on remand, the trial court needed only to strike the two reversed counts from Kilgore's judgment and sentence and to correct his offender score; and (4) Blakely did not apply to Kilgore's remaining five exceptional sentences because they were final before Blakely was decided.
¶ 9 Following a hearing on October 7, 2005, which Kilgore did not attend,[2] the trial court agreed with the State. The trial court ruled that (1) because it was hearing a legal argument, rather than conducting a resentencing, Kilgore could waive his right to be present; and (2) "[t]he Defendant's case was final in October or November of 2002. I am not resentencing the Defendant based upon the decisions of the higher court. Rather, I am correcting the Judgment and Sentence, and that's what we need to accomplish." Report of Proceeding (Oct. 7, 2005) at 13.
¶ 10 On October 27, 2005, the trial court issued two orders. The first order, purporting to have been entered nunc pro tunc to *376 November 1, 2002, stated that Kilgore's case was final when the Supreme Court issued its mandate in October 2002, that Kilgore was entitled to an order correcting his judgment and sentence by striking the two reversed counts and reducing his offender score on the remaining counts, and that he was not entitled to a new sentencing hearing. The second order corrected the 1998 judgment and sentence by striking references to reversed counts I and II and by reducing Kilgore's offender score from 18 to 12. The trial court left intact its 1998 judgment and exceptional sentences on the five affirmed counts.[3]

III. Second Appeal, After Remand
¶ 11 Kilgore appealed the trial court's ruling that he was not entitled to resentencing on remand. The State moved to dismiss Kilgore's appeal for failure to raise an appealable issue. Our court commissioner denied the State's motion to dismiss without prejudice.
¶ 12 The State reasserts its motion to dismiss, which we now grant.

ANALYSIS

I. No Resentencing for Affirmed Convictions on Remand
¶ 13 Although we ultimately dismiss Kilgore's appeal as untimely and improperly before us, we nevertheless first address his contention that the trial court erred in failing to exercise its discretion to resentence him on remand from his first appeal, in which he did not challenge his exceptional sentences. If Kilgore is correct that the trial court should have resentenced him for his affirmed convictions when it considered our remand in 2005, then the remedy would be for us to remand again, this time for resentencing, rather than to dismiss his appeal.
¶ 14 Kilgore contends that (1) because our previous reversal of two of his convictions resulted in two fewer current offenses and, consequently, a reduced offender score, he was entitled to resentencing for his affirmed counts on remand;[4] and (2) therefore, the trial court erred in failing to resentence him on the five affirmed counts. We disagree.
¶ 15 In each of the cases Kilgore cites, recalculation of an erroneous offender score on remand changed the defendant's standard sentencing range.[5] But such is not the case here: Elimination of the two reversed convictions left Kilgore with an offender score of 12, still greater than 9, and, consequently, the same standard sentencing range as before his offender score recalculation.
*377 ¶ 16 We agree with the State that a reduced standard range, not a reduced offender score,[6] requires resentencing on remand. See State v. Argo, 81 Wash.App. 552, 915 P.2d 1103 (1996), in which Division One of our court held that remand for resentencing was unnecessary because his standard range remained the same, even though the defendant's offender score was reduced from 16 to 13. Argo, 81 Wash.App. at 569, 915 P.2d 1103. See also State v. Fleming, 140 Wash. App. 132, 138, 170 P.3d 50 (2007) ("A trial court may determine that nine convictions exist and then stop calculating, so long as the court is not considering the imposition of an exceptional sentence based on reasons related to the offender score,"[7]citing State v. Lillard, 122 Wash.App. 422, 433, 93 P.3d 969 (2004)). Kilgore, however, has not demonstrated a reduced standard range warranting resentencing.
¶ 17 Nevertheless, Kilgore attempts to appeal the trial court's failure to resentence him on remand, even though (1) his reduced offender score remained greater than nine; (2) he fails to show how a recalculated offender score greater than nine would have changed his sentence, especially in light of the fact that his standard sentencing ranges for his affirmed convictions remained the same; (3) he does not challenge the length of his exceptional sentences; and (4) he never challenged any of the exceptional sentence aggravating factors or their applicability, either in his first appeal or on remand. Rather, he argues that on remand, he was entitled to have the trial court resentence him to a standard range sentence under Blakely.[8]
*378 ¶ 18 We agree with the dissent that for Blakely to apply, "The only requirement is that his case was not final as of June 24, 2004." Dissent at page 15. But we respectfully disagree with the dissent's assertion, based on intermediate federal court caselaw, that Kilgore's 1998 judgment and sentence was not final until 2005. Instead, we hold that Kilgore's 1998 judgment and sentence became final when our Supreme Court issued its mandate from his direct appeal in 2002, well before the United States Supreme Court's 2004 issuance of Blakely.
¶ 19 We agree with the dissent that our remand was "open-ended" when we "remanded for further proceedings." Thus, in theory, the trial court could have considered resentencing Kilgore for the affirmed convictions on remand,[9] and then, arguably, as Kilgore and the dissent assert, Blakely may very well have applied. But that is not what happened here.[10]
¶ 20 On the contrary, our remand did not require the trial court to resentence Kilgore for his affirmed convictions, the trial court did not choose to exercise its discretion to resentence,[11] and it did not err in so exercising its discretion. Thus, we respectfully disagree with the dissent's assertion that Kilgore's sentence was not final until after the 2005 remand. Dissent at 19-20. We hold instead that the trial court's discretionary response to our remand resulted in the October 7, 2005 hearing functioning as a correction of the 1998 judgment and sentence for the two reversed convictions but not a re-sentencing for the five affirmed convictions.
¶ 21 We conclude, therefore, that the trial court neither abused its discretion nor erred in denying Kilgore's request to resentence him under Blakely. Accordingly, Kilgore's attempt to appeal the trial court's refusal to resentence him on remand fails.

II. Motion To Dismiss Appeal
¶ 22 We next address the State's motion to dismiss, which challenges whether Kilgore's appeal is properly before us. Relying on Barberio, 121 Wash.2d 48, 846 P.2d 519, the State argues that our court commissioner should have dismissed Kilgore's appeal (his second) because (1) he could have challenged his exceptional sentences in his first appeal, but did not; and (2) the trial court did not resentence Kilgore on remand, but rather left his original exceptional sentences intact for the convictions affirmed in the first appeal. We agree with the State that Barberio requires dismissal of Kilgore's appeal.
¶ 23 Barberio was convicted of second and third degree rape and given exceptional sentences. Similar to Kilgore, Barberio initially appealed only his convictions, not his exceptional sentences. Division One of our court reversed his third degree rape conviction and affirmed his second degree rape conviction. Barberio, 121 Wash.2d at 49, 846 P.2d 519. Similar to Kilgore's case, on remand, the State elected not to retry Barberio for the reversed, third degree rape.
¶ 24 At resentencing, Barberio challenged the aggravating factors the trial court had found at his original sentencing. He contended that his reduced offender score and standard range, resulting from reversal of one count, entitled him to a reduction in his exceptional sentences on his affirmed count. Barberio, 121 Wash.2d at 49-50, 846 P.2d 519. The trial court imposed the same sentences *379 it had originally imposed. And Barberio again appealed.
¶ 25 The State moved to dismiss Barberio's second appeal because he had failed to challenge his exceptional sentences in his first appeal. Division One of our court ruled:
We grant the State's motion [to dismiss] as to those issues which could have been raised in the first appeal, and deny the motion as to those issues which could not have been raised at that time. We affirm the exceptional sentence imposed at the resentencing hearing.
State v. Barberio, 66 Wash.App. 902, 903, 833 P.2d 459 (1992).[12]
¶ 26 The Supreme Court granted limited review to clarify the rationale supporting Division One's partial dismissal of Barberio's appeal. Barberio, 121 Wash.2d at 50, 846 P.2d 519. The Court noted that on remand, the trial court had discretion to revisit an issue the defendant did not raise in the initial appeal, and if it did, the appellate court could also review the issue. Barberio, 121 Wash.2d at 51, 846 P.2d 519 (citing RAP 2.5(c)(1)). Reviewing the trial court's rulings on remand, however, the Court concluded that the trial court had not exercised its discretion to consider on remand issues that Barberio could have, but did not, raise in his first appeal. See Barberio, 121 Wash.2d at 51, 846 P.2d 519; Barberio, 66 Wash.App. at 906, 833 P.2d 459. Thus, the Court held that Barberio could not challenge his exceptional sentences in his second appeal.
¶ 27 The procedural posture of Kilgore's successive appeals is analogous to that in Barberio. Like Barberio, Kilgore did not challenge his exceptional sentences in his first appeal, and the trial court did not exercise its discretion to reconsider Kilgore's exceptional sentences on remand. Therefore, Kilgore cannot now challenge his original 1998 exceptional sentences in his second appeal, following remand from his first appeal; this remand did not require resentencing and instead, left intact Kilgore's original, unchallenged 1998 exceptional sentences on his five affirmed convictions.
¶ 28 The dissent maintains that (1) the Barberio Court dismissed only old issues that Barberio could have raised in his first appeal, whereas Blakely presented a new issue that Kilgore could not have raised in his first appeal; and (2) Blakely should apply here because "Kilgore's case did not become final when the mandate was filed[, our] remand was not ministerial in nature, [and] the trial court's subsequent actions [are] appealable." Dissent at 20. We respectfully disagree.
¶ 29 When the trial court chose not to exercise its discretion under Barberio to resentence Kilgore on remand "for further proceedings," our remand became ministerial in nature: The trial court merely corrected Kilgore's original judgment and sentence by ordering deletion of his two reversed convictions; the trial court did nothing to alter Kilgore's 1998 exceptional sentences for his five affirmed convictions. Again, as we have previously noted, there was no resentencing on remand for Kilgore to appeal. Kilgore had already exercised his right to appeal his original judgment and sentence, and he had lost on appeal with respect to his five affirmed convictions, the exceptional sentences for which he had chosen not to challenge.
¶ 30 Applying Barberio, we grant the State's motion to dismiss Kilgore's appeal.
ARMSTRONG, J. (Dissenting).
¶ 31 I respectfully dissent for the following reasons: (1) the majority addresses the substantive issue raised on appeal and then dismisses the appeal; (2) the majority applies an incorrect legal standard and reaches the wrong result in resolving that issue; and (3) the majority incorrectly interprets the relevant case law in support of its alleged dismissal of this appeal.
¶ 32 Before explaining these points, I find it necessary to address the trial court's attempt to enter its 2005 order, stating that Kilgore's judgment and sentence was final when the Supreme Court issued its mandate *380 in October 2002, nunc pro tunc to November 1, 2002. The majority assumes without deciding that this order was invalid but fails to see how that invalidity affects its rationale.
¶ 33 The invalid nunc pro tunc order is relevant because it introduces the faulty premise on which the majority opinion rests: i.e., that Kilgore's judgment and sentence was final in 2002, well before Blakely was filed. In the hope of avoiding similar orders and the confusion they create, I set forth a brief explanation of the applicable law.
¶ 34 The purpose of a nunc pro tunc order is to record some prior act of the court that was actually performed but not then entered into the record. State v. Nicholson, 84 Wash.App. 75, 78-79, 925 P.2d 637 (1996). A nunc pro tunc order is not a proper means to remedy omissions. State v. Rosenbaum, 56 Wash.App. 407, 411, 784 P.2d 166 (1989); see also State v. Smissaert, 103 Wash.2d 636, 641, 694 P.2d 654 (1985) (a retroactive entry is proper to rectify the record as to acts that did occur but not as to acts that should have occurred).
¶ 35 The nunc pro tunc order entered here was issued to remedy an omission; i.e., the fact that Kilgore's judgment and sentence was not amended directly after his appeal was mandated. There was no hearing on November 1, 2002, and the nunc pro tunc order that purports to record an act performed on that date is invalid, at least insofar as its retroactivity is considered. (The second 2005 order, which corrected Kilgore's judgment and sentence, was not entered nunc pro tunc.) Both of the trial court's orders therefore must be evaluated as of their 2005 filing dates, a requirement that defeats the possibility that Kilgore's sentence was final in 2002.
¶ 36 The key in this appeal is whether the trial court erred in holding that it was not bound by Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), when it amended Kilgore's judgment and sentence on October 27, 2005. The majority observes that Kilgore has never challenged any of the exceptional sentence aggravating factors or their applicability, either in his first appeal or on remand. The majority then holds that to argue that Blakely applies on remand,
[Kilgore] would have to show either some flaw in the predicate facts underlying his original exceptional sentences or that the previous appellate decisions questioned the validity of his original sentences for his five affirmed convictions. But Kilgore argues neither, and the previous appellate and Supreme court decisions evince none.
Majority at 377 n. 8.
¶ 37 In order for previous appellate decisions to have questioned Kilgore's sentences, he would have had to challenge those sentences on appeal or in seeking discretionary review. The majority thus holds that a party may take advantage of a new rule of criminal procedure only if the party has raised an argument related to that rule in an earlier proceeding.[13] The majority cites no authority for this proposition, and with good reason. The law in Washington is that a new rule for the conduct of criminal prosecutions applies retroactively "to all cases, state or federal, pending on direct review or not yet final." In re Pers. Restraint of St. Pierre, 118 Wash.2d 321, 326, 823 P.2d 492 (1992) (citing Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)); see also Derman v. United States, 298 F.3d 34, 39 (1st Cir.2002) (if conviction is not final when United States Supreme Court announces new rule of criminal procedure, then inferior courts must apply that rule to defendant's case).
¶ 38 In accord with that rule, this court has stated repeatedly that the key to granting sentencing relief under Blakely is whether a case was final when Blakely was issued. See State v. Monroe, 126 Wash.App. 435, 453 n. 3, 109 P.3d 449 (2005) (Blakely applies to all cases in which review was not final on June 24, 2004), overruled on other grounds, State *381 v. Clarke, 156 Wash.2d 880, 134 P.3d 188 (2006); State v. Brundage, 126 Wash.App. 55, 64 n. 11, 107 P.3d 742 (2005) (same), review denied, 157 Wash.2d 1017, 142 P.3d 607 (2006); State v. Van Buren, 123 Wash.App. 634, 639, 98 P.3d 1235 (2004) (same), overruled on other grounds, State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005). There is no need for the defendant to have somehow "triggered" Blakely relief by complaining of his exceptional sentence beforehand. The only requirement is that his case was not final as of June 24, 2004. See In re Pers. Restraint of VanDelft, 158 Wash.2d 731, 147 P.3d 573 (2006) (VanDelft appealed his convictions but not his sentence, but because his convictions were not final when Blakely was filed, he was entitled to relief based on Blakely), cert. denied, ___ U.S. ___, 127 S.Ct. 2876, 167 L.Ed.2d 1172 (2007); State v. Cubias, 155 Wash.2d 549, 120 P.3d 929 (2005) (defendant did not challenge exceptional sentence on appeal or in petition for review but was allowed to amend the petition to challenge his sentence after Blakely was filed).
¶ 39 Indeed, the Washington Supreme Court expressly rejected the majority's approach in St. Pierre. The State argued there that the petitioner's conviction was final as to the issue raised, despite recent case law in his favor, because he had failed to pursue that issue on direct appeal. St. Pierre, 118 Wash.2d at 327, 823 P.2d 492. In response, the court quoted the definition of finality given in Griffith v. Kentucky:
By "final," we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.
St. Pierre, 118 Wash.2d at 327, 823 P.2d 492 (quoting Griffith, 479 U.S. at 321 n. 6, 107 S.Ct. 708 n. 6). The St. Pierre court interpreted that language to contemplate the finality of the case as a whole, and it rejected the notion that an issue could become final for the purposes of retroactivity analysis before the case as a whole became final. "A contrary approach would encourage parties to maintain seemingly frivolous claims on appeal in the hope another decision may announce a new rule. Such an approach would result in an inefficient use of judicial resources and distract parties from issues of consequence." St. Pierre, 118 Wash.2d at 327, 823 P.2d 492. The issue is not whether a party has somehow preserved the right to claim relief under a new rule of law but whether his case was final when that new rule was announced. See St. Pierre, 118 Wash.2d at 327, 823 P.2d 492; see also Derman, 298 F.3d at 42 (because new rule was announced before petitioner's case became final, it "follows inexorably" that the rule applies to his case).
¶ 40 Accordingly, the question here is whether Kilgore's conviction was final when Blakely was issued on June 24, 2004. I have found no Washington cases discussing the effect of a partial reversal and remand on a judgment's finality, particularly where a new rule of criminal procedure is at issue. But see In re Pers. Restraint of Skylstad, 160 Wash.2d 944, 946, 162 P.3d 413 (2007) (holding that judgment is not final until both the conviction and sentence are final). The State cites a single case holding that the right to appeal is exhausted when the appellate court issues its mandate. See State v. Hunt, 76 Wash.App. 625, 629, 886 P.2d 1170 (1995). In Hunt, however, the defendant's conviction and sentence were affirmed on appeal, and its brief discussion of finality is of little guidance given the facts here.
¶ 41 More pertinent is the Second Circuit's decision in Burrell v. United States, 467 F.3d 160 (2nd Cir.2006), cert. denied, ___ U.S. ___, 127 S.Ct. 2031, 167 L.Ed.2d 773 (2007). Burrell was convicted of conspiring to distribute drugs and organizing a continuing criminal enterprise ("CCE"). In 2000, the district court imposed two concurrent life sentences, based in part on federal sentencing requirements regarding the CCE charge. Burrell, 467 F.3d at 161-62. The Second Circuit affirmed the CCE conviction but vacated the conspiracy conviction and remanded for correction of the judgment to reflect that dismissal. The court issued its mandate in 2002, and the Supreme Court denied Burrell's petition for certiorari in 2003. Burrell, 467 F.3d at 162.
*382 ¶ 42 By order dated March 29, 2005, the district court directed the court clerk to file an amended judgment reflecting the conspiracy claim's dismissal. When Burrell argued that the 2005 order should be corrected in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the district court rejected his argument. Burrell, 467 F.3d at 162. (Booker held that Blakely applied to the federal sentencing guidelines, ultimately rendering them advisory rather than mandatory. Booker, 543 U.S. at 245-46, 125 S.Ct. 738.)
¶ 43 Burrell appealed, arguing that Booker applied to his case because his judgment was not yet final when it was decided. Burrell, 467 F.3d at 162-63. His appeal required the Second Circuit to determine, for the first time, when a criminal judgment becomes final for the purposes of retroactivity of a new constitutional rule when it affirms one conviction and remands for dismissal of another. Burrell, 467 F.3d at 164. The court noted that with its mandate, it had directed the district court to undertake a single non-discretionary act: to correct the judgment to reflect the dismissal of the conspiracy conviction. Burrell, 467 F.3d at 165-66. The court had affirmed Burrell's sentence because the guidelines mandated a life sentence based on the CCE conviction alone. Because the remand was strictly ministerial, Burrell's conviction became final either when the Supreme Court denied his petition for a writ of certiorari or when his time for filing a certiorari petition expired. Burrell, 467 F.3d at 166. Therefore, Burrell's case was final before Booker was decided. Burrell, 467 F.3d at 167. The court framed its holding regarding finality as follows:
Under our holding today, a criminal judgment is final when we reverse some portion of the judgment and remand to the district court only if we affirm both the adjudication of guilt and the sentence on at least one count, and our remand is for the strictly ministerial task of correcting the judgment to reflect the dismissal of one or more counts, whose dismissal must not have affected the sentence, as indicated by our affirmance. We fail to see how a mandate expressed in such categorical, final terms could be construed to leave matters open for the district court to decide.
Burrell, 467 F.3d at 169.
¶ 44 In so holding, the Second Circuit rejected the Ninth Circuit's analysis in United States v. Colvin, 204 F.3d 1221 (9th Cir. 2000). Colvin had to determine when a judgment becomes final for purposes of the statute of limitations governing habeas corpus petitions when an appellate court "partially affirms and partially reverses a conviction and remands to the district court with instructions to amend the judgment." Colvin, 204 F.3d at 1222. The Ninth Circuit ultimately concluded that if the appellate court reverses any portion of a conviction or sentence and remands to the district court, the judgment is not final until the district court has acted on remand and the time has passed for appealing that action. Colvin, 204 F.3d at 1225-26.
¶ 45 The Ninth Circuit subsequently applied Colvin to a set of facts more similar to those presented here. See United States v. LaFromboise, 427 F.3d 680 (9th Cir.2005). A jury convicted LaFromboise of five drug convictions and three firearms convictions, and he received a 720-month sentence (360 months for the drug counts and 360 months for the firearms counts). LaFromboise, 427 F.3d at 681. On appeal, the Ninth Circuit vacated the firearms convictions and remanded for retrial. The government moved to dismiss the firearms counts, however, and the district court granted the motion in 1997. The district court did not conduct a new sentencing hearing on the affirmed counts or enter an amended judgment in light of the dismissed counts. Thus, when LaFromboise was issued, the only judgment of record still provided for the original 720-month sentence and still included convictions on each firearm count. LaFromboise, 427 F.3d at 682.
¶ 46 Citing Colvin as support, the Ninth Circuit concluded that without an amended judgment, LaFromboise's conviction was not yet final. LaFromboise, 427 F.3d at 683. The court noted that its mandate in the prior appeal clearly contemplated further trial proceedings, and it added that implicit in that mandate was the opportunity for resentencing. LaFromboise, 427 F.3d at 684. Although *383 the trial court was bound by then-mandatory sentencing guidelines in its original sentencing decision, Booker would apply on resentencing to free the court from those guidelines. LaFromboise, 427 F.3d at 685 n. 6. That new sentence would then be appealable. LaFromboise, 427 F.3d at 685.
¶ 47 The dissenting judge disagreed that an amended judgment was necessary to achieve finality, reading Colvin to support the conclusion that finality was achieved when the district court acted on the court's mandate by dismissing the firearms charges:

Colvin's holding hinged on the finality of the proceedings, not on the fact that finality was achieved through an amended judgment. . . . We explained that when we reverse any portion of a conviction or sentence and remand to the district court, the judgment of conviction does not become final until the court has acted on remand and the time has passed for appealing the district court's action.
LaFromboise, 427 F.3d at 687 (citing Colvin, 204 F.3d at 1225-26) (Callahan, J., dissenting).
¶ 48 Kilgore's judgment is not final under any interpretation of Burrell or Colvin. Following our reversal of two of Kilgore's convictions, we remanded for further proceedings. Our remand was necessarily open-ended, since we had no way of predicting whether the State would in fact retry Kilgore on those counts and thus no way of directing how his sentence should be modified. Our remand language is clearly distinguishable from that used in both Burrell and Colvin. Under Burrell, Kilgore's case did not become final when the mandate was filed because our remand was not ministerial in nature, thus rendering the trial court's subsequent actions appealable. Under Colvin, Kilgore's case did not become final when the mandate was filed because our remand required the trial court to act and Kilgore again was entitled to appeal that action.
¶ 49 The majority notes my reliance on intermediate federal case law for this portion of my dissent. Our Supreme Court cited similar case law, including LaFromboise, to support its holding that a judgment is not final until the conviction and sentence are both final. See Skylstad, 160 Wash.2d at 952 n. 5, 162 P.3d 413. In doing so, the court cited with approval the following statement from Richardson v. Gramley, 998 F.2d 463, 465 (7th Cir.1993): "A judgment is not final if the appellate court has remanded the case to the lower court for further proceedings, unless the remand is for a purely `ministerial' purpose, involving no discretion, such as recomputing prejudgment interest according to a set formula." Skylstad, 160 Wash.2d at 952 n. 5, 162 P.3d 413.
¶ 50 The majority acknowledges that our remand in this case was open-ended and left the trial court with discretion to resentence Kilgore. But, in an astonishing grant of authority, the majority states that our remand became ministerial when the trial court decided not to resentence Kilgore and not to provide him relief under Blakely. The majority's analysis alters the law governing the finality of decisions and the applicability of new rules of criminal procedure by giving the trial courts of this state the power to determine whether a defendant may take advantage of a decision rendered by the United States Supreme Court. Were it not for the fact that the majority's entire discussion of this issue is dictum, this would be an alarming development indeed.
¶ 51 The characterization of our remand order depends on our language in the context of our decision, not on what the trial court does in response to our language, particularly where, as here, the trial court attempted to foreclose Kilgore's Blakely rights with a nunc pro tunc order entered after Blakely purporting to rule that Kilgore's case was final before Blakely. The majority concedes that the trial court had the power to resentence Kilgore, and if it had the power, our remand order can not be construed as ministerial. The trial court's exercise of discretion in not altering Kilgore's sentence simply demonstrates again that Kilgore's case was not yet final. Because it was not final when Blakely was filed, Kilgore is entitled to relief thereunder.
¶ 52 Necessary to this holding is the conclusion, contrary to the majority's, that Kilgore's *384 appeal is properly before us.[14] Having disposed of the essential issue in the case, the majority then dismisses the appeal. The majority does so after citing but not heeding the language from Division One's opinion in State v. Barberio, 66 Wash.App. 902, 903, 833 P.2d 459 (1992), aff'd, 121 Wash.2d 48, 846 P.2d 519 (1993): "We grant the State's motion [to dismiss the second appeal] as to those issues which could have been raised in the first appeal, and deny the motion as to those issues which could not have been raised at that time." (Emphasis added.) Barberio had appealed his convictions but not his exceptional sentences in his first appeal. After Division One reversed one conviction and the trial court imposed the same sentence on the remaining conviction on remand, the defendant appealed again. During that second appeal, Division One considered whether the trial court should have reduced the exceptional sentence in proportion to the reduced offender score and standard range. Barberio, 66 Wash.App. at 905, 833 P.2d 459.
¶ 53 Somewhat similar circumstances are presented here. On Kilgore's first appeal, he challenged his convictions but not his exceptional sentences. This court reversed some of his convictions, and the trial court eventually imposed the same exceptional sentences on his remaining convictions despite the reduction in his offender scores and, more significantly, despite the issuance of Blakely. Kilgore could not have anticipated the trial court's 2005 ruling in his first appeal, and he is entitled to challenge it now.
PENOYAR, J.
¶ 54 I concur in the result. The important distinction here is between Kilgore's case as a whole as against his individual convictions and sentences. Five of Kilgore's convictions occurred, and their sentences were imposed, in 2002. In 2005, the trial court had the opportunity to revisit these sentences but chose not to do so. Nothing in this court's order required any action by the trial court regarding those sentences. Had the trial court chosen to reconsider the sentences, Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), would have limited the facts that the trial court could have considered. This never happened. Therefore, the sentences from 2002 remain in effect.
NOTES
[1] The record does not show whether Kilgore was present when the trial court considered this request. But the State did not ask the superior court to strike the two reversed counts, and the record shows no alteration of the 1998 judgment and sentence.
[2] Kilgore waived his right to be present for the trial court's determination of whether he had a right to resentencing.
[3] The dissent disputes that the 2005 orders maintained the 2002-mandated finality of Kilgore's 1998 judgment and sentence for the five affirmed counts. As we explain in our analysis above, we respectfully disagree. Moreover, assuming, without deciding, that the dissent correctly notes the 2005 nunc pro tunc order was invalid, we fail to see how this point affects our majority rationale.

Accordingly, we adhere to our position that the 1998 judgment and sentence, which became final when mandated in 2002, remained intact, valid, and effective for sentencing purposes on the affirmed counts, which sentences were not affected in anyway when the trial court chose not to resentence for those affirmed counts during the 2005 remand.
[4] Kilgore maintains that the incorrect offender score alone required the trial court to resentence him, citing State v. Jackson, 129 Wash.App. 95, 109 n. 14, 117 P.3d 1182 (2005), review denied, 156 Wash.2d 1029, 133 P.3d 474 (2006); State v. Roche, 75 Wash.App. 500, 513, 878 P.2d 497 (1994); and State v. Parker, 132 Wash.2d 182, 189, 937 P.2d 575 (1997).
[5] See Roche, 75 Wash.App. at 505, 878 P.2d 497 (without questionable prior conviction, score would be four instead of five). In Jackson, the court stated that ordinarily the imposition of an exceptional sentence requires a correct determination of the standard range, and remand is necessary when the offender score has been miscalculated unless the record makes clear that the trial court would impose the same sentence. 129 Wash.App. at 109, 117 P.3d 1182. After citing the passage from Roche, the Supreme Court added in Parker that, because the sentencing court must correctly calculate the standard range before imposing an exceptional sentence, failure to do so is legal error subject to review. 132 Wash.2d at 189, 937 P.2d 575. "We are hesitant to affirm an exceptional sentence where the standard range has been incorrectly calculated because of the great likelihood that the judge relied, at least in part, on the incorrect standard ranges in his calculus." Parker, 132 Wash.2d at 190, 937 P.2d 575 (cited in State v. Ford, 137 Wash.2d 472, 485, 973 P.2d 452 (1999)).
[6] Kilgore cites no authority to support his related argument that the trial court was obligated to resentence him on remand because our reduction of his total convictions from seven to five would likely have had an impact. Thus, we do not further consider this argument. See RAP 10.4(a)(5).

Moreover, Kilgore acknowledges that the trial court did not cite the multiple-offense policy as an aggravating factor to support his exceptional sentences. And the trial court specifically said it was basing its exceptional sentences on Kilgore's lack of remorse, a factor that does not reflect a likelihood that the sentencing court would have changed its sentence on remand based on five, instead of the original seven, counts. In contrast, see State v. Stewart, 125 Wash.2d 893, 897, 890 P.2d 457 (1995) (multiple offense policy can be cited as aggravating factor when defendant has committed several crimes and his high offender score does not result in any greater penalty than if he had committed only one).
[7] The trial court based Kilgore's sentence on the aggravating factors of (1) violation of a position of trust; (2) the vulnerability of his victims; and (3) Kilgore's lack of remorse.
[8] Because Kilgore's case was tried before Blakely and before the Sentencing Reform Act amendments, he further asserts that Blakely would have required the trial court to impose standard range sentences if it had resentenced him on remand in 2005. We agree that Kilgore would have been entitled to standard range sentences if he had been resentenced at the 2005 remand hearing. See State v. Pillatos, 159 Wash.2d 459, 480, 150 P.3d 1130 (2007). But this is not what happened. Kilgore was not resentenced for his five affirmed convictions on remand in 2005 and, therefore, Blakely did not apply.

Moreover, if we were to remand Kilgore for resentencing on his affirmed convictions now, as the dissent suggests, Blakely would apply; but RCW 9.94A.537 (the Legislature's "Pillatos fix") would also apply. To comply with Blakely, RCW 9.94A.537(2) authorizes the trial court to convene a special jury to make factual findings necessary to support an exceptional sentence "as follows:
In any case where an exceptional sentence above the standard range was imposed and where a new sentencing hearing is required, the superior court may impanel a jury to consider any alleged aggravating circumstances listed in RCW 9.94A.535(3), that were relied upon by the superior court in imposing the previous sentence, at the new sentencing hearing.
But we are not remanding for resentencing on Kilgore's previously affirmed convictions. Thus, RCW 9.94A.537(2) will not come into play here.
We further note, however, that even if Kilgore were to use this appeal, or a personal restraint petition, to reopen his 1998 exceptional sentences on his previously affirmed convictions, he would have to show either some flaw in the predicate facts underlying his original exceptional sentences or that the previous appellate decisions questioned the validity of his original exceptional sentences for these five affirmed convictions. But Kilgore argues neither, and the previous appellate and Supreme court decisions evince none. Absent argument and showing that the predicates for Kilgore's 1998 exceptional sentences (the aggravating factors and their applicability) were erroneous, he cannot now establish that the trial court was required to resentence him on remand in 2005. And because the trial court neither was required to resentence him for his affirmed convictions on remand in 2005 nor undertook to resentence him, Blakely did not come into play. Thus, contrary to the dissent's assertion, there was no sentencing error on remand in 2005 for us now to correct.
[9] See Barberio, 121 Wash.2d at 51, 846 P.2d 519 (citing RAP 2.5(c)(1)).
[10] The dissent further asserts we erroneously suggest that "a party may take advantage of a new rule of criminal procedure only if the party has raised an argument related to that rule in an earlier proceeding." Dissent at 380. The dissent misapprehends our explanation. On the contrary, we mean simply that we did not remand expressly for resentencing; rather, we remanded more generally for "further proceedings." This general remand language allowed the trial court to do what it did here  it removed the reversed convictions from the 1998 judgment and sentence but chose not to exercise its discretion to resentence Kilgore for the affirmed convictions. Thus, there was no resentencing on remand to which Blakely might have applied.
[11] We do not further address the State's contention that when, on remand, it declined to retry Kilgore on the two reversed convictions, the trial court lost jurisdiction to resentence him.
[12] Division One reviewed (1) whether the trial court should have reduced Barberio's exceptional sentence in proportion to his reduced offender score and standard range, and (2) whether substantial evidence supported the trial court's "especially predatory" finding underlying Barberio's exceptional sentence. See Barberio, 66 Wash. App. at 905, 833 P.2d 459.
[13] With regard to taking advantage of Blakely in particular, the majority adds that Kilgore must show "some flaw in the predicate facts." Majority at 377 n. 8. But if Kilgore's case was not final when Blakely was filed, his receipt of an exceptional sentence based on facts a judge rather than a jury found entitles him to relief. See State v. Hughes, 154 Wash.2d 118, 134, 156, 110 P.3d 192 (2005).
[14] The majority dismisses Kilgore's appeal as untimely as well as improper. Kilgore filed his notice of appeal within 30 days of the trial court's October 27 orders, in compliance with RAP 5.2(a). I do not see how his appeal could have been more timely.