IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38535-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOUIS L. HANSON also known as | ) | UNPUBLISHED OPINION |
| LOUIS MONTOYA, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Louis Montoya appeals from his resentencing for the murder of

Aaron Cummings. The superior court resentenced Montoya in fulfillment of 2021

legislation that demanded resentencing of one committed as a persistent offender in part

based on a second-degree robbery conviction. S.B. 5164, 67th Leg. Reg. Sess. (Wash.

2021). Before this court, Montoya argues that the resentencing court erred when denying

his request for an exceptional downward sentence and when refusing to declare that some

of Montoya's earlier convictions constituted the same criminal conduct. We reject

Montoya's appellate arguments. Nevertheless, we accept the State's admission of an

incorrect offender score. We remand with directions to make a ministerial correction to

the offender score and with leave to the trial court, in its discretion, to conduct a further

resentencing.

FACTS

We narrated the underlying facts in *State v. Hanson, aka Montoya*, No. 32129-1-

III, slip op. (Wash. Ct. App. Jan. 26, 2016) (unpublished),

No. 38535-3-III
*State v. Montoya*

http://www.courts.wa.gov/opinions/pdf/321291.unp.pdf. Louis Montoya belonged to the Sureño gang. On a December night in 2012, Montoya saw Aaron Cummings wearing red clothing and red shoes in a mutual acquaintance's home. The red clothing prompted Montoya to question whether Cummings belonged to the rival Norteño gang. After Cummings confirmed his loyalty to the Norteño gang, a fight ensued.

Trial testimony conflicted as to events beginning with the fight. Louis Montoya testified that he initially entered the home to retrieve a gun for a friend. After Montoya and Cummings fought:

> [Montoya:] I kind of stumbled back like, all right, you know, whatever, I'm cool.
> [Defense Counsel:] What do you mean by that?
> [Montoya:] I'm done, you know. Have a seat, you know. I looked to see where he was at and he just—he gives me this crazy evil look like he's just disgusted and reaches with his right hand real fast over the left side of his body and—
> [Defense Counsel:] Let me stop you there. Where was he at that point?
> [Montoya:] He slid back all the way towards the wall on the bed and he just barely had his ankles hanging off of the bed like he was like laying back.
> [Defense Counsel:] Is that where you believed the gun was?
> [Montoya:] I was told it was in between the mattresses on the closest side to the closet, so, yes.
> [Defense Counsel:] Go ahead.
> [Montoya:] And then after he gives me that crazy look, he just reaches real fast, crosses his body with the right side of his hand. And I apologize to the courts, but excuse my language, but I just like, "oh, shit, the gun." And I just pulled the revolver out from the front of my pants, and I was ready to run to the right to try to get out of the room, and I pointed the gun in his direction and fired one shot.

2

Clerk's Papers (CP) at 51.  Other eyewitnesses testified that Cummings never reached for

any object before the shooting.

Louis Montoya raised self-defense at trial.  He contended that, because Aaron

Cummings initially reached for a gun, he shot Cummings.  The jury rejected Montoya's

self-defense argument and convicted him of first-degree murder.

In 2013, the trial court sentenced Louis Montoya for the murder conviction.  The

court entered the following markings on the felony judgment and sentence's criminal

history section:

**2.2    Criminal History:  (RCW 9.94A.525):**

| Crime | Date of Crime | Crime Type | Adult or Juv | Place of Conviction | Sent. Date |
|---|---|---|---|---|---|
| 2 ASSAULT 2 | 082104 | V | A | SPOKANE CO, WA | 120604 |
| 2 ASSAULT 2 | 082104 | V | A | SPOKANE CO, WA | 120604 |
| 2 ROBBERY 1 | 082104 | V | A | SPOKANE CO, WA | 120604 |
| TMVWOP | 091703 | NV | A | WHITMAN CO, WA | 110703 |
| MAL MISCHIEF 1 | 120701 | NV | A | SPOKANE CO, WA | 031402 |
| 1 ROBBERY 2 | 120701 | V | A | SPOKANE CO, WA | 031402 |

*DV:  Domestic Violence was pled and proved.

[ ]    Additional criminal history is attached in Appendix 2.2
[ ]    The defendant committed a current offense while on community placement/community
        custody (adds one point to score).  RCW 9.94A.525.
[✓]    The prior offenses listed as number(s) _1 + 2_ above, or in appendix 2.2, require
        that the defendant be sentenced as a **Persistent Offender** (RCW 9.94A.570).
[ ]    The prior convictions listed as number(s) _____ above, or in appendix 2.2, are
        one offense for purposes of determining the offender score (RCW 9.94A.525).
[ ]    The prior convictions listed as number(s) _____ above, or in appendix 2.2, are
        not counted as points but as enhancements pursuant to RCW 46.61.520:

CP at 222.  The trial court inserted "1" next to a 2001 conviction for second degree

robbery.  The court wrote "2" next to convictions for crimes committed on August 21,

2004: two convictions of second-degree assault and one conviction of first-degree robbery. A reasonable reading of the judgment and sentence shows an intent that, as a result of the one conviction marked with a "1" and the three convictions marked with a "2," Louis Montoya qualified as a persistent offender. The trial court checked the box reading "The prior offenses listed as number(s) 1 + 2 above, or in appendix 2.2, require that the defendant be sentenced as a **Persistent Offender** (RCW 9.94A.570)." CP at 222.

The 2013 sentencing court left unchecked a box that declared "The prior convictions listed as number(s) _____ above, or in appendix 2.2, are one offense for purposes of determining the offender score (RCW 9.94A.525)." CP at 222. The earlier 2004 felony judgment and sentence expressed no finding that the three August 21, 2004 convictions constituted the same criminal conduct.

RCW 9.94A.570 demands that a trial court sentence a persistent offender to a term of total confinement for life without the possibility of release. The 2013 court sentenced Louis Montoya to lifetime confinement.

PROCEDURE

In 2021, the Washington Legislature amended the Sentencing Reform Act of 1981, chapter 9.94A RCW, to require resentencing whenever a persistent offender finding had been predicated in part on a second-degree robbery conviction. S.B. 5164, 67th Leg. Reg. Sess. (Wash. 2021), *codified at* RCW 9.94A.647. Because the 2013

sentencing court based its persistent offender finding partially on Louis Montoya's 2001

conviction for second degree robbery, the trial court ordered resentencing.

During resentencing in 2021, Louis Montoya requested an exceptional downward

departure to his sentence. Montoya argued to the resentencing court that Aaron

Cummings had initiated the violent incident and that Montoya shot Cummings under

duress. In support of his request, Montoya attached a transcript of his trial testimony.

The State requested a sentence within the standard range. The State's sentencing

brief forwarded a statement of facts that contradicted Louis Montoya's trial testimony.

The State submitted no transcript of trial testimony, however. The superior court file

contained this court's 2016 unpublished opinion issued following Montoya's original

appeal from his trial.

At resentencing, Louis Montoya's lawyer acknowledged:

> [DEFENSE COUNSEL:] I do want to make a note with regards to
> the offender score. I've gone over the offender score with my client. I
> recognize there's some difficulty understanding how his offender score got
> to where it is, and part of that is because the offenses that he has on his
> record, two of them occurred out of the same course and conduct, and as it
> was originally explained to Mr. [Montoya], those would count as one
> incident.
> But then when you come today and you look at the sentencing range,
> those convictions are treated independently with their own multipliers and
> so we are not arguing that. I just wanted the Court to know though that
> that's been a source of confusion for my client in understanding why he's at
> the range of where he's at.
> THE COURT: And so you would agree that his offender score is an
> 11? It, in essence, is a 9-plus for purposes of the range that I'm dealing
> with however.

> [DEFENSE COUNSEL]: A 9-plus, yes, Your Honor.
> THE COURT: And are [you] in agreement with the month range as well as the enhancement amount?
> [DEFENSE COUNSEL]: Yes, Your Honor.

Report of Proceedings (RP) (Oct. 12, 2021) at 8-9.

The resentencing court declined to grant a mitigating downward departure in

Louis Montoya's sentence. The court commented:

> The defendant has asked that I find that there are mitigating factors, and kind of in a shortcut way, it is for this Court to determine by a preponderance of the evidence whether the victim was an initiator, willing participant, or an aggressor. The other piece of that is a failed defense or a failed self-defense claim. As I review the briefing, both are appropriate. It certainly is an argument that the statute allows the defendant to make, and [defense counsel] has done what I deem to be a really straightforward way of putting that before the Court. The statute outlines those mitigating factors.
> The question before this Court is whether those mitigating factors should be applied in this circumstance. The case law outlined in [defense counsel's] briefing does give the examples of when it is appropriate, the examples of how other courts have found those mitigating factors.
> In analyzing all of this information, I come back then to what was the defendant found guilty of and what is his criminal history. In reviewing the case law and the facts outlined, including the failed defense cases, I find that I cannot get myself to that level of granting the mitigating factors here and finding by a preponderance that the victim was an aggressor in this matter. It is clear that there was a fight, but the information before this Court was that Mr. [Montoya] started the fight.
> The perceptions are perception. I'm not sure how the Court gets to the bottom of perceptions, but I'm being asked to then find this failed defense and use that as a mitigating factor for sentencing. I am not going to do that. I am declining to use either one of the elements as a basis for mitigating factors here.

RP (Oct. 12, 2021) at 41-42.

Louis Montoya's defense attorney signed the prosecutor's listing of criminal history. The list included Montoya's 2004 convictions that added two points to the offender score. Montoya refused to sign the criminal history recitation.

On the felony judgment and sentence, the resentencing court calculated Louis Montoya's offender score as an "11" with a seriousness level of "XV." CP at 178. The court did not find that Montoya's 2004 convictions constituted the same criminal conduct. The grid entry for the combination of the serious level and offender score, when adding a 60-months firearm enhancement, placed Montoya within a total standard range of 471-608 months of confinement. The court sentenced Montoya to 540 months of confinement.

## LAW AND ANALYSIS

On appeal, Louis Montoya reasserts arguments presented to the resentencing court. First, Montoya complains that the court erred when denying his request for an exceptional downward sentence. Second, Montoya asserts that the trial court should have scored his three 2004 convictions as one point based on the same criminal conduct. We disagree.

Unrelated to Louis Montoya's assignments of error, the State acknowledges an error in the trial court's calculation of the offender score, but argues the error was harmless. The State requests remand for a technical correction to the offender score without a new hearing. We accept the State's concession and remand with directions to

7

make a ministerial correction to the offender score and with leave to the trial court, in its

discretion, to conduct a further resentencing.

Exceptional Sentence Downward

A sentencing court may afford an exceptional sentence below the standard range if

it finds mitigating circumstances by a preponderance of the evidence. RCW

9.94A.535(1). During resentencing, Montoya requested an exceptional downward

sentence based on two statutorily prescribed factors:

> [1] To a significant degree, the victim was an initiator, willing
> participant, aggressor, or provoker of the incident. . . .
> . . . .
> [2] The defendant committed the crime under duress, coercion,
> threat, or compulsion insufficient to constitute a complete defense but
> which significantly affected his or her conduct.

RCW 9.94A.535(1)(a), (c).

In determining whether to grant an exceptional downward departure, a sentencing

court may consider failed defenses, such as self-defense. *State v. Jeannotte*, 133 Wn.2d

847, 851, 947 P.2d 1192 (1997). A failed trial defense may support an exceptional

downward sentence if the circumstances leading to the crime, even though falling short of

establishing a legal defense, justify distinguishing the conduct from that involved absent

those circumstances. *State v. Hutsell*, 120 Wn.2d 913, 921, 845 P.2d 1325 (1993).

Generally, a trial court's imposition of a sentence within the standard range is not

appealable. RCW 9.94A.585(1). A party may, however, challenge the underlying legal

8

conclusions and determinations by which the sentencing court reached its decision. *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003). A trial court may not refuse to exercise discretion or rely on an impermissible basis in denying an exceptional sentence below the standard range. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

Louis Montoya faults the sentencing court for failing to accept uncontroverted evidence of self-defense. Montoya presents this court no case law definition for "uncontroverted evidence" or elucidation as to when evidence ripens into "uncontroverted evidence." More importantly, Montoya references no procedural rule, under which the sentencing court must accept his version of the facts if the State fails to submit testimony under oath or fails to supply the court a trial transcript. The rules of evidence do not apply to sentencing hearings. ER 1101(c)(3). The State's sentencing brief recited contrasting, though uncited, facts to counter Montoya's testimony. The sentencing court also had access to this court's prior unpublished opinion, which discussed witness testimony that Aaron Cummings never reached for a gun.

Even if the trial court should have limited itself to consideration of Louis Montoya's trial testimony, the court was not required to find that testimony convincing. Undisputed evidence is not necessarily credible evidence. *Rea v. Rea*, 19 Wn. App. 496, 501, 576 P.2d 84 (1978). We find no error in the resentencing court's rejection of Montoya's version of the slaying.

9

Louis Montoya also argues that the resentencing court summarily rejected his request for an exceptional sentence and thereby failed to exercise required discretion. To the contrary, the resentencing hearing record demonstrates that the court listened to Montoya's argument, reviewed available information, and concluded that the evidence established that Montoya started the altercation. We conclude that the resentencing court appropriately exercised discretion in denying Montoya's request for an exceptional sentence below the standard range.

## 2004 Convictions

Louis Montoya next faults the resentencing court for failing to consider the 2004 convictions for first-degree robbery and two-second degree assaults as the same criminal conduct. He complains of the addition of three offender points, instead of one.

Louis Montoya asserts this error for the first time on appeal. Nevertheless, illegal or erroneous sentences may be challenged for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

When multiple prior criminal convictions constitute the "same criminal conduct," the sentencing court must count the convictions as a single offense for the purpose of calculating an offender score. "Same criminal conduct" means two or more crimes that (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589(1)(a). RCW 9.94A.525(5)(a)(i) controls when a sentencing court must treat prior offenses as the "same criminal conduct:"

10

Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently . . . whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used.

The SRA requires a court to treat prior offenses as the "same criminal conduct" in

two circumstances:

Under [RCW 9.94A.525(5)(a)(i)'s] first sentence, the current sentencing court is required to treat prior offenses as a single offense if such offenses "were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct." If there was no such finding, the second sentence applies. That sentence requires the current sentencing court to make its own determination "using the 'same criminal conduct' analysis found in RCW 9.94A.589(1)(a)."

*State v. Johnson*, 180 Wn. App. 92, 101, 320 P.3d 197 (2014) (quoting RCW

9.94A.55(5)(a)(i)) (internal citations omitted). The defendant bears the burden to

establish same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219

(2013). This court reviews a determination of whether multiple convictions constituted

the same criminal conduct for abuse of discretion or misapplication of the law. *State v.*

*Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011).

Louis Montoya argues that the 2013 court's insertion of a "2" next to each of his

three 2004 convictions evinced a finding of same criminal conduct. The argument

implicates RCW 9.94A.525(5)(a)(i)'s first sentence, which requires the 2021 sentencing

11

court to defer to a prior court's determination that multiple offenses constituted the same criminal conduct.

Contrary to Louis Montoya's arguments, the 2013 sentencing court's notations are linked to its persistent offender finding. Under Washington's "three strikes" sentencing rule:

> "Persistent offender" is an offender who:
> (a)(i) Has been convicted in this state of any felony considered a most serious offense; and
> (ii) Has, before the commission of the offense under (a) of this subsection, been convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.94A.525; provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted.

RCW 9.94A.030(37).

The 2013 sentencing court marked a "1" next to Louis Montoya's robbery in the second-degree conviction. Second-degree robbery was a "most serious offense" when Montoya was sentenced in 2013. Former RCW 9.94A.030(32)(o) (2012). Any of Montoya's 2004 convictions could have counted for the second strike, as both assault in the second degree, RCW 9.94A.030(32)(b), and robbery in the first degree, as a class A felony, RCW 9.94A.030(32)(a); RCW 9A.56.200(2), are considered "most serious offenses." The 2013 sentencing court also left unchecked the box that would have found Louis Montoya's prior convictions to constitute the same criminal conduct.

12

Louis Montoya also suggests the 2004 judgment and sentence contained a finding of same criminal conduct. We find no such finding. The 2004 court did not check the box that would have found same criminal conduct.

Offender Score

The State volunteers that the resentencing court incorrectly scored Louis Montoya's 2004 first-degree robbery conviction as three points, when it should have only counted for two points. Louis Montoya did not assign error or raise any issues in this appeal pertaining to his offender score. The resentencing court, through no fault of its own, entered the offender score to which the parties stipulated.

Murder in the first-degree is a serious violent offense. RCW 9.94A.030(46)(a)(i). When a defendant's present conviction is for a serious violent offense, the offender score is calculated by counting three points for prior serious violent offense convictions, two points for each prior violent conviction, one point for each prior adult nonviolent felony conviction, and one-half point for each prior juvenile nonviolent felony conviction. RCW 9.94A.525(9). Robbery in the first degree is not classified as a serious violent offense. RCW 9.94A.030(46). Robbery in the first degree is, however, a class A felony and constitutes a violent offense. RCW 9.94A.030(58)(a)(i); RCW 9A.56.200(2). The State correctly observes that the sentencing court should have scored Louis Montoya's prior conviction for robbery in the first-degree as two points rather than three.

13

The State's new calculation decreases Louis Montoya's offender score from 11 to a 10. 9+ is the maximum offender score provided on the sentencing grid. RCW 9.94A.510. Thus, the score for purposes of the sentencing grid did not change. The trial court's sentencing range of 471-608 months was correctly calculated. The sentencing range will not change following the State's proposed correction.

When the standard range sentence is miscalculated, resentencing is generally required. See *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). Resentencing is not required to an incorrectly calculated offender score that does not affect the standard range. *State v. Kilgore*, 141 Wn. App. 817, 824, 172 P.3d 373 (2007), *aff'd*, 167 Wn.2d 28, 216 P.3d 393 (2009) (*Kilgore* III) (plurality opinion).

*State v. Kilgore*, 141 Wn. App. 817 (2007) illustrates a recalculation of a high score. In *Kilgore* III, Mark Kilgore was convicted of seven counts of child rape and child molestation. The original sentencing court calculated his offender score as 18 and imposed concurrent exceptional sentences on each of the seven counts. Kilgore appealed, but did not challenge his sentence. This court reversed two of the seven convictions on direct appeal and remanded the prosecution for retrial on those counts. The State elected not to retry the two counts, and the trial court elected not to resentence Kilgore. Instead, the court corrected Kilgore's judgment and sentence by striking the two counts and reducing his offender score, but otherwise confirming the concurrent exceptional sentences of the remaining five counts.

14

Mark Kilgore appealed the trial court's refusal to resentence him. Among other assignments of error, he argued that his recalculated offender score required resentencing. This court disagreed and held that "a reduced standard range, not a reduced offender score, requires resentencing on remand." *State v. Kilgore* III, 141 Wn. App. 817, 824-25 (emphasis and footnote omitted). The Supreme Court affirmed this court and explained:

> Where an error in a defendant's offender score affects the applicable sentencing range, resentencing is required. *Id*. Resentencing is also required where the sentencing range is unaffected "if the trial court had indicated its intent to sentence at the low end of the range, and the low end of the correct range is lower than the low end of the range determined by using the incorrect offender score." [*In re Pers. Restraint of Goodwin,* 146 Wn.2d 861,] 868, 50 P.3d 618 [(2002)]. Although Kilgore's offender score was reduced from 18 to 12, his presumptive sentencing range remained the same. The trial court indicated no intention to sentence Kilgore at the low end of the sentencing range. As the Court of Appeals noted, there was no sentencing error on remand to correct. *Kilgore* III, 141 Wn. App. at 825 n.8.

*State v. Kilgore* III, 167 Wn.2d at 41-42 (footnote omitted). Thus, while the trial court could have reconsidered Kilgore's sentence on remand, it did not abuse its discretion when refusing to do so.

Other cases have similarly held that a recalculated offender score that does not affect a defendant's standard range is harmless unless the trial court indicated a desire to sentence at the low end of the sentencing range. *State v. Priest*, 147 Wn. App. 662, 673, 196 P.3d 763 (2008); *State v. Fleming*, 140 Wn. App. 132, 138, 170 P.3d 50 (2007); *State v. Argo*, 81 Wn. App. 552, 915 P.2d 1103 (1996). Nevertheless, courts reached a

15

different result in *State v. Griepsma*, 17 Wn. App. 2d 606, 621, 490 P.3d 239 (2021),

*review denied*, 198 Wn.2d 1016, 495 P.3d 844 (2021) and *State v. McCorkle*, 88 Wn.

App. 485, 945 P.2d 736 (1997), *aff'd*, 137 Wn.2d 490, 973 P.2d 461 (1999).  Wherein the

courts remanded for resentencing after recalculating an offender score from a 10 to a 9

and from a 13 to a 9, respectively.  In *Griepsma*, the court found that the erroneous

calculation of the defendant's offender score was not harmless when the record does not

clearly indicate that the sentencing court would have imposed the same sentence.  In

attaching importance to the absence of an indication from the sentencing court that it

would have imposed the same sentence anyway, *McCorkle* relied on *Parker,* which

involved the incorrect calculation of the sentencing range, not merely the offender score.

Louis Montoya's resentencing court acknowledged that Montoya's offender score

totaled beyond 9.  But the felony judgment and sentence reflected an offender score of

11, not a 9+.  In light of *Kilgore* and this court's similarly reasoned cases, we decline to

order resentencing, but we remand with directions to make a ministerial correction to the

offender score and with leave to the trial court, in its discretion, to conduct a further

resentencing.

## CONCLUSION

We reject Montoya's appellate arguments, but remand with directions to correct

the offender score.  On remand, the trial court has discretion to conduct further

16

resentencing if it determines that the recalculated offender score would likely have an impact on the sentence imposed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Staab, J.