189 P.3d 853 (2008)
STATE of Washington, Respondent,
v.
Dustin Ross KELLEY, Appellant.
No. 35944-8-II.
Court of Appeals of Washington, Division 2.
August 12, 2008.
*854 Rebecca Wold Bouchey, Attorney at Law, Mercer Island, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty. Office, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
HUNT, J.
¶ 1 Dustin R. Kelley appeals his first degree murder, second degree unlawful firearm possession, and second degree assault jury convictions with firearm sentence enhancements. He argues that (1) his trial counsel was ineffective when he failed to present evidence of his mental illness at trial and failed to propose a diminished capacity jury instruction, and (2) the firearm sentence enhancement for his second degree assault conviction violates double jeopardy. We affirm.

FACTS

I. CRIMES
¶ 2 On February 22, 2006, at about 5:30 PM, Beau Pearson was visiting his friend Klaus Stearns in Stearns's mother's backyard trailer. Pearson had brought his friend Valerie Greenfield to "hang out" in the trailer with Stearns, and Stearns's friend, Kelly Kowalski. Stearns's mother, Petra Scholl, paged him to talk about his day. Steams left the trailer and went into his mother's house to speak with her.
¶ 3 While Steams was gone, Dustin Kelley parked a blue Acura in the alley behind Scholl's house and trailer, went into the trailer, confronted Pearson, who was sitting on the bed with Greenfield, and asked Pearson if he had been shot before. Kelley then walked to the trailer door, turned around, drew out two guns, walked back to Pearson, and said, "I smoke you and your bitch, too." Report of Proceedings (Nov. 16, 2006) at 609.
¶ 4 Pearson turned to Greenfield, told her he was sorry, and pushed her out of the way. Kelley then shot Pearson at least eight times, left the trailer, and went through the property's back gate. Pearson's gunshot wounds were immediately fatal.
¶ 5 After hearing the gunshots and watching Kelley leave the trailer, Steams saw Greenfield come out of the trailer with a "zombied out" look and walk past him without making eye contact. Kowalski also came out of the trailer acting "very upset." Stearns went into the trailer and found Pearson slumped forward on the bed. After checking to see if Pearson was alive, Steams called 911.
¶ 6 Officers arrived at the scene, took statements from the witnesses, and collected evidence. In the blue Acura that Kelley had left parked in the alley, an officer found a magazine clip of .45 caliber rounds, which matched bullets found in the trailer and in Pearson's body.

II. PROCEDURE
¶ 7 The State charged Kelley with first degree murder, second degree unlawful firearm possession, and second degree assault. The State also alleged firearm sentence enhancements for the first degree murder and second degree assault charges.

A. Trial
¶ 8 At trial, Stearns, Scholl, Greenfield, Kowalski, law enforcement officers, a forensic scientist, and the county's medical examiner testified for the State. Detective Robert Yerbury testified that he had interviewed Kelley's girl friend, Molly Matlock, on the day of the murder. Matlock had told him that (1) Kelley's drug use was "[c]asual"; (2) Kelley appeared "pretty serious" the day of the murder; (3) Kelley did not appear under the influence of drugs on the day of the murder; and (4) on the day of the murder, Kelley had told Matlock that he was going to confront someone about his brother's missing stereo equipment.
*855 ¶ 9 Matlock testified for the defense that (1) Kelley had been using methamphetamine during the two weeks before the murder; (2) Kelley's behavior before the murder was "[n]othing out of the ordinary"; (3) Kelley sometimes carried a gun; and (4) Kelley was "pretty clear-headed."
¶ 10 Kelley proposed a voluntary intoxication jury instruction, but the trial court declined to give it because there had been no evidence that Kelley was intoxicated at the time of the shooting. Kelley's counsel did not propose a diminished capacity jury instruction.
¶ 11 The jury found Kelley guilty as charged and returned special verdicts finding that Kelley had committed premeditated first degree murder and second degree assault while armed with a deadly weapon.

B. Sentencing
¶ 12 The trial court sentenced Kelley to a standard range sentence of 524 months of confinement for his first degree murder conviction, 60 months for his unlawful firearm possession conviction, and 48 months for his second degree assault conviction, all to run concurrently. The trial court also imposed firearm sentence enhancements of 192 months to run also imposed firearm sentence enhancements of 192 months to run consecutively to the sentences for Kelley's first degree murder and second degree assault convictions.
¶ 13 Kelley appeals.

ANALYSIS

I. FIREARM SENTENCE ENHANCEMENT
¶ 14 Kelley argues that (1) the firearm sentence enhancement on his second degree assault conviction violates double jeopardy; and (2) the United States Supreme Court's holding in Blakely[1] changes well-settled double jeopardy analysis in that Blakely characterizes the firearm sentence enhancement as an additional element of the underlying crime. Kelley concedes that Division I of our court[2] has rejected this double-jeopardy firearm-sentence-enhancement argument. Nevertheless, he argues that Division I did not correctly apply the law. We disagree.
¶ 15 Contrary to Kelley's argument, Division I correctly held that "[i]t is well settled that sentence enhancements for offenses committed with weapons do not violate double jeopardy even where the use of a weapon is an element of the crime." State v. Nguyen, 134 Wash.App. 863, 866, 142 P.3d 1117 (2006), review denied, ___ Wash.2d ___, 187 P.3d 752 (2008). Nguyen argued that "the firearm enhancement `acts like an element of a higher crime' and because the enhancement does not apply to certain crimes in which possession or use of a firearm is an element, the enhancement creates unintended, redundant punishment." 134 Wash.App. at 867, 142 P.3d 1117. Nguyen's argument was identical to Kelley's argument.
¶ 16 In rejecting this argument, the Nguyen court noted that the legislature had provided exemptions from the firearm sentence enhancement for specific crimes and "[a]ny `redundancy' in mandating enhanced sentences for other offenses involving use of a firearm is intentional." 134 Wash.App. at 868, 142 P.3d 1117. Division I also held that "Blakely does not implicate double jeopardy but rather involves the procedure required by the Sixth Amendment for finding the facts authorizing the sentence." Nguyen, 134 Wash.App. at 868, 142 P.3d 1117 (citing Blakely v. Washington, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)). Adopting Nguyen, we hold that Blakely does not apply to Kelley's double jeopardy argument, nor does it change well-settled double jeopardy analysis.
¶ 17 Following Nguyen, we hold that Kelley's firearm sentence enhancement does not violate double jeopardy. Accordingly, we affirm his sentences.
¶ 18 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder *856 shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: VAN DEREN, C.J., and PENOYAR, J.
NOTES
[1] Blakely v. Washington, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[2] State v. Nguyen, 134 Wash.App. 863, 866, 142 P.3d 1117 (2006), review denied, ___ Wash.2d ___, 187 P.3d 752 (2008).