[No. 36442-5-II.   Division Two.   April 21, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. LEON G. TONEY, *Appellant*.

*Sheryl G. McCloud* (of *Law Offices of Sheryl Gordon McCloud*), for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Michelle Hyer, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Leon Glennquaree Toney appeals his sentences for first degree assault, first degree burglary, first degree unlawful possession of a firearm, and two firearm enhancements. In a previous appeal, we affirmed Toney's convictions but remanded for resentencing. Toney now argues that he is entitled to a second appeal because the trial court conducted a full sentencing hearing on remand and erred by imposing (1) a sentence above the statutory

maximum and (2) firearm enhancements that constitute double jeopardy without a valid procedure to do so. We agree with Toney that he can appeal, but, finding no error, we affirm.

## FACTS

¶2 On August 28, 1997, the trial court sentenced Toney to 339 months' imprisonment for an incident that occurred on or about December 20, 1996.[1] The sentence included 75 months for first degree burglary, 216 months for first degree assault, and 48 months for first degree unlawful possession of a firearm. The court added two consecutive 60-month firearm enhancements and ordered community placement.

¶3 Toney appealed, arguing that former RCW 9.94A.310 (1996) does not mandate firearm enhancements to run consecutively. *State v. Toney*, noted at 95 Wn. App. 1031, 1999 WL 294615, at *1, 1999 Wash. App. LEXIS 822, at *14. We agreed and remanded for resentencing under "proceedings consistent with this opinion." *Toney*, 1999 WL 294615, at *6, 1999 Wash. App. LEXIS 822, at *15.

¶4 The trial court held a resentencing hearing on September 29, 2000. Toney informed the State on the morning of the hearing that he was going to raise other sentencing issues, and the State had no authority to offer the court as to why it could not hear other issues. At the hearing, the State asked the court to impose the high end of the standard range. But it conceded that "there's no way we can contest the fact that the defendant's sentence enhancements should run concurrent with each other . . . ." Report of Proceedings (RP) (Sept. 29, 2000) at 4-5. Toney's counsel then urged the court to "reconsider the imposition of a standard range sentence . . . ." RP (Sept. 29, 2000) at 6. The court responded, "I don't think you have to argue that. I've sort of approached this as if that's what we were doing all

---

[1] The applicable version of the Sentencing Reform Act of 1981 is that which was in effect when Toney committed his offense. RCW 9.94A.345.

along." RP (Sept. 29, 2000) at 6. Counsel went on to say that "we're pretty much going to do a resentencing," and told the court that Toney wanted a sentence at the low end of the standard range. RP (Sept. 29, 2000) at 6. The prosecution did not respond. The court balanced many factors[2] before imposing a high-end standard-range sentence for the charges, and it entered a new judgment and sentence. The State recognized that the hearing was a resentencing proceeding.

¶5 The trial court ordered a total of 276 months' incarceration and up to two years of community placement. Toney appeals this sentence.

## ANALYSIS

### I. ISSUE RAISED FOR FIRST TIME ON APPEAL

¶6 Initially, the State asserts that under *State v. Kilgore*, 141 Wn. App. 817, 172 P.3d 373 (2007), *review granted*, 164 Wn.2d 1001 (2008), Toney cannot challenge his new sentences because the court imposed them following our ministerial remand. Toney counters that he can argue issues he did not raise on his first appeal because on remand the trial court conducted a full resentencing hearing, not simply a ministerial correction of his sentence; and, according to Toney, the legal basis for his constitutional claims was not established at the time of his first appeal.

¶7 In *Kilgore*, we had reversed two out of seven of Kilgore's convictions and remanded " 'for further proceedings.' " *Kilgore*, 141 Wn. App. at 820-21. On remand, the State did not retry Kilgore on the two reversed counts; it merely ordered him to pay appellate costs. *Kilgore*, 141 Wn. App. at 821. Two years after the hearing on remand, the trial court corrected the sentence by reducing Kilgore's offender score and striking the two reversed convictions but

---

[2] These factors included the fact that Toney had "taken steps to improve himself," that he used a gun in the commission of the crime, and the severe injury Toney inflicted. RP (Sept. 29, 2000) at 12-13.

declined to reassess Kilgore's exceptional sentences under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *Kilgore*, 141 Wn. App. at 822. The State moved to dismiss Kilgore's second appeal, arguing that he should have challenged his sentences in his first appeal and that there was no resentencing on remand for Kilgore to appeal. *Kilgore*, 141 Wn. App. at 827. We found that the remand was "ministerial" because the trial court merely corrected the original judgment, left the convictions intact, and chose not to exercise its discretion to resentence the defendant. *Kilgore*, 141 Wn. App. at 829. Because there was no resentencing on remand, the defendant lost his right to appeal the sentences he chose not to challenge in his first appeal. *Kilgore*, 141 Wn. App. at 829-30.

¶8 We revisited *Kilgore* in *State v. McNeal*, 142 Wn. App. 777, 175 P.3d 1139 (2008), where we permitted the defendant to appeal after the court had vacated his original sentence. *McNeal*, 142 Wn. App. at 787 n.13. We recognized that a conviction is final when both the conviction and the sentence are final. *McNeal*, 142 Wn. App. at 786 (citing *In re Pers. Restraint of Skylstad*, 160 Wn.2d 944, 949-50, 162 P.3d 413 (2007)). We explained that the sentence was not final because "the resentencing on remand was an entirely new sentencing proceeding" and noted that had this court merely remanded for amendment of the judgment, the analysis would be different. *McNeal*, 142 Wn. App. at 787 n.13.

¶9 Thus, under *Kilgore* and *McNeal*, the defendant may raise sentencing issues on a second appeal if, on the first appeal, the appellate court vacates the original sentence or remands for an entirely new sentencing proceeding, but not when the appellate court remands for the trial court to enter only a ministerial correction of the original sentence. Here, Toney's sentence was not final because our remand did not limit the trial court to making a ministerial correction. Rather, we unequivocally "remand[ed] for resentencing." *Toney*, 1999 WL 294615, at * 1, 1999 Wash. App. LEXIS 822, at *12.

¶10 Moreover, the trial court exercised its discretion by conducting a full, adversarial resentencing proceeding, giving both sides the opportunity to be heard. At the remand hearing, Toney's counsel urged the court to "reconsider the imposition of a standard range sentence . . . ." RP (Sept. 29, 2000) at 6. The court responded, "I don't think you have to argue that. I've sort of approached this as if that's what we were doing all along." RP (Sept. 29, 2000) at 6. Counsel went on to say that "we're pretty much going to do a resentencing" and told the court that Toney wished to ask for a sentence at the low end of the standard range. RP (Sept. 29, 2000) at 6. The prosecution did not respond to that request. After balancing the appropriate factors, the court imposed a sentence at the high end of the standard range for the burglary and weapons charges, ran the two enhancements consecutively to the underlying offenses but concurrently to each other, and entered a new judgment and sentence. Unlike the trial court in *Kilgore*, the trial court here did not simply amend a judgment; rather, like the trial court in *McNeal*, it exercised the authority we gave it and completely resentenced Toney by reducing his sentence from 336 months to 276 months after finding that the firearm enhancements should run concurrently.

¶11 We conclude that *Kilgore* does not bar Toney from appealing his resentencing.

## II. COMMUNITY PLACEMENT

¶12 Toney next maintains that his sentence, when combined with his community placement,[3] exceeds the statutory maximum for his crimes. He asserts that under *Blakely*[4] and the rule of lenity, the "statutory maximum" means the

---

[3] Community placement is in addition to other terms of the sentence and may consist of community custody, postrelease supervision, or both. RCW 9.94A-.030(7).

[4] *Blakely*, 542 U.S. at 303-04 (holding that under the Sixth Amendment, the " 'statutory maximum' " is "the maximum [punishment] a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," and that it "is not the maximum [punishment] a judge may impose after finding

high end of the standard sentence range under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW.[5] We disagree.

## A. Combination of Maximum Sentence and Community Placement

■ ■ ¶13 We have a duty to correct an erroneous sentence. *In re Pers. Restraint of Call*, 144 Wn.2d 315, 334, 28 P.3d 709 (2001). When a court sentences a defendant to the statutory maximum, and also to community custody, the judgment and sentence should set forth the statutory maximum and ensure that the term of community custody does not exceed that maximum. *State v. Vant*, 145 Wn. App. 592, 605-06, 186 P.3d 1149 (2008) (citing *State v. Sloan*, 121 Wn App. 220, 221, 87 P.3d 1214 (2004)). Where the judgment and sentence does not so indicate, we remand for clarification of the sentence or resentencing when the combination exceeds the statutory maximum. *State v. Hibdon*, 140 Wn. App. 534, 538, 166 P.3d 826 (2007).

## B. RCW 9A.20.021 Defines a Crime's "Statutory Maximum"

¶14 The SRA provides standard range sentences based on the defendant's offender score and the seriousness of the crime. *See* former RCW 9.94A.310. Under this presumptive range, Toney had an offender score of 6 and a seriousness level of 7 for the burglary, making his maximum presumptive sentence 75 months under former RCW 9.94A.310. He had an offender score of 6 and a seriousness level of 12 for the assault, making his maximum presumptive sentence

---

additional facts, but the maximum he may impose *without* any additional findings." (some emphasis omitted)).

[5] Toney reasons that under *Blakely*, a jury was required to find the facts necessary to impose a sentence above the statutory maximum. But the trial court can and must impose community placement; it does not require additional fact finding under *Blakely*; it is mandatory for violent or felony offenses independent of *Blakely*. *See* RCW 9.94A.715(1) ("the court *shall* in addition to the other terms of the sentence, sentence the offender to community custody . . ." (emphasis added)); *see also State v. Jones*, 159 Wn.2d 231, 241, 149 P.3d 636 (2006) (recognizing that community placement "does not implicate the core concern of . . . *Blakely*").

216 months under former RCW 9.94A.310. Toney was also sentenced to 60 months for the firearm enhancement.

¶15 Former RCW 9.94A.120(13) (1996) explicitly provides that ". . . a court may not impose a sentence providing for a term of . . . community placement which exceeds the *statutory maximum* for the crime *as provided in chapter 9A.20* RCW." (Emphasis added.) RCW 9A.20.021(1) specifies the maximum confinement for the assault, burglary charges, and firearm possession charges "[u]nless a different maximum sentence for a classified felony is specifically established by a statute of this state." But the "unless" provision was not added until 2003, years after Toney committed his offenses. LAWS OF 2003, ch. 53, § 63. Regardless, the SRA statutes do not establish the statutory maximum because they expressly recognize the differences between the presumptive range and the statutory maximum. *See* former RCW 9.94A.420 (1983) ("If the presumptive sentence duration given in the sentencing grid exceeds the statutory maximum sentence for the offense, the statutory maximum sentence shall be the presumptive sentence."); former RCW 9.94A.120(2) (a defendant may be subject to a sentence higher than the standard range); former RCW 9.94A.120(10)(c) (referencing chapter RCW 9A.20 as the "maximum allowable sentence"). Chapter 9A.20 RCW unambiguously provides the statutory maximum, which the sentence and community placement combined may not exceed.

¶16 Furthermore, *Blakely* does not require us to find that "statutory maximum" means the high end of the presumptive standard sentence range. Toney is correct that under *Blakely*, a jury must find the facts necessary to impose a sentence greater than the high end of the standard range. *See Blakely*, 542 U.S. at 303-04. But that changes only the procedure by which the maximum sentence may be imposed, not the definition of a crime's "statutory maximum." *See State v. Knotek*, 136 Wn. App. 412, 425, 149 P.3d 676 (2006), *review denied*, 161 Wn.2d 1013 (2007). In fact, after *Blakely*, Washington courts have consistently determined

the "statutory maximum" of a crime by looking to RCW 9A.20.021, not the high end of the standard range under the SRA. *See, e.g., State v. Bobenhouse*, 143 Wn. App. 315, 331, 177 P.3d 209 (2008) (statutory maximum for first degree child rape is life (citing RCW 9A.20.021)), *review granted*, 164 Wn.2d 1021 (2008); *State v. Thompson*, 143 Wn. App. 861, 871, 181 P.3d 858 (2008) (maximum sentence for murder is life imprisonment (citing RCW 9A.20.021)); *State v. Adams*, 138 Wn. App. 36, 51, 155 P.3d 989 (2007) (statutory maximum for class A felony is life imprisonment (citing RCW 9A.20.021)); *Knotek*, 136 Wn. App. at 425 (finding that *Blakely* "does not nullify life imprisonment as the statutory maximum for a Class A offense," but "reduce[s] the maximum terms of confinement to which the court could sentence" without a jury fact finding). We conclude that RCW 9A.20.021 provides the statutory maximum.

## C. Toney's Sentence Did Not Exceed the Statutory Maximum under RCW 9A.20.021

¶17 The trial court on remand sentenced Toney to "two years [of community placement] or up to the period of earned early release awarded . . . , whichever is longer." Clerk's Papers at 75. The judgment confined Toney to 216 months for first degree assault and 75 months for first degree burglary. First degree assault and first degree burglary are class A felonies with a statutory maximum of life in prison. RCW 9A.36.011(2); RCW 9A.52.020(2); RCW 9A.20.021(1)(a). Toney's sentences of 75 months and 216 months plus the community placement of 2 years do not exceed the maximum statutory sentence of life imprisonment for the assault and burglary charges.

¶18 The judgment also confines Toney to 48 months' imprisonment for first degree unlawful possession of a firearm. The statutory maximum for this class B felony is 10 years. RCW 9.41.040(1)(b); RCW 9A.20.021(1)(b). This sentence similarly does not exceed the statutory maximum because the firearm possession sentence (48 months) plus the community placement (2 years) does not exceed 10 years.

¶19 Thus, the sentences combined with the community placement do not exceed the statutory maximum for each crime as defined by chapter 9A.20 RCW.

## III. DOUBLE JEOPARDY

¶20 Toney also maintains that the firearm sentencing enhancement applicable to his assault with a firearm conviction violates his protection against double jeopardy because it is "the functional equivalent of an element of the crime" for which he was already convicted. Br. of Appellant at 21, 25.

¶21 The Washington State Constitution prohibits the State from punishing a defendant twice for the same crime: "No person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. A defendant's double jeopardy rights are violated if he is convicted of offenses that are identical both in fact and in law. *State v. Womac*, 160 Wn.2d 643, 652, 160 P.3d 40 (2007) (quoting *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)). " '[O]ffenses are not constitutionally the same if there is any element in one offense not included in the other and proof of one offense would not necessarily prove the other.' " *Womac*, 160 Wn.2d at 652 (quoting *State v. Trujillo*, 112 Wn. App. 390, 410, 49 P.3d 935 (2002)).

¶22 We recently resolved Toney's argument in *State v. Kelley*, 146 Wn. App. 370, 189 P.3d 853 (2008), *review granted*, 165 Wn.2d 1027 (2009). In *Kelley*, we rejected the argument that *Blakely* mandates courts to characterize firearm enhancements as an additional element of the crime for double jeopardy purposes. *Kelley*, 146 Wn. App. at 374. We agreed with Division One that " 'sentence enhancements for offenses committed with weapons do not violate double jeopardy even where the use of a weapon is an element of the crime.' " *Kelley*, 146 Wn. App. at 374 (quoting *State v. Nguyen*, 134 Wn. App. 863, 866, 142 P.3d 1117 (2006), *review denied*, 163 Wn.2d 1053, *cert. denied*, 129 S. Ct. 644 (2008)). *Nguyen* pointed out that the

legislative intent behind the firearm enhancement is unmistakable: to impose a longer sentence when a firearm is used in a crime unless an exception applies. *Nguyen*, 134 Wn. App. at 868. We follow *Kelley* and *Nguyen*, and we hold that the firearm enhancement here does not violate double jeopardy.

### IV. FIREARM ENHANCEMENT PROCEDURE

¶23 Finally, Toney maintains that the trial court lacked a statutory basis to impose a firearm enhancement because it could not empanel a jury to do so. Thus, he reasons, no procedure existed for a jury to find the enhancement factors beyond a reasonable doubt at his resentencing hearing. The State contends that we should not consider this issue because Toney did not raise it below and it is not a constitutional issue. The court in *Nguyen* recognized that the defendant had not preserved this issue for appeal because he had failed to object to the special verdict forms at trial, but the court exercised its discretion and addressed the issue anyway. *Nguyen*, 134 Wn. App. at 870-71 n.13 (deadly weapon special verdict statute allows jury to find firearm enhancement facts by special verdict); *see also State v. Recuenco*, 163 Wn.2d 428, 439, 180 P.3d 1276 (2008) (recognizing that the special verdict requirement under the deadly weapon statute provides a proper procedure for firearm enhancement). Like the defendant in *Nguyen*, Toney failed to object to the special verdict forms regarding the firearm enhancements. We decline to address the issue.

¶24 Affirmed.

HOUGHTON and BRIDGEWATER, JJ., concur.