**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53822-9-II |
| Respondent, | |
| v. | |
| PHILLIP VICTOR HICKS, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Phillip Victor Hicks appeals from his resentencing on his first degree murder, attempted first degree murder, and first degree unlawful possession of a firearm convictions. Hicks, who was 20 years and 5 months old when he committed the crimes, argues that the resentencing court failed to give meaningful consideration to his request for an exceptional mitigated sentence based on his youth and brain development at the time of the commission of the crimes. Hicks raises additional arguments in a Statement of Additional Grounds for Review[1] (SAG). Because Hicks does not show that the court abused its discretion when it denied his request for an exceptional sentence and his SAG arguments fail, we affirm.

---

[1] RAP 10.10.

FACTS

I. BACKGROUND, TRIAL, AND ORIGINAL SENTENCING

The background facts in this case were succinctly summarized by our supreme court in Hicks's original appeal:

> On the night of March 21, 2001, two men approached Jonathan Webber and his wife Chica as they were walking from a friend's house and asked the couple if they had drugs. The Webbers told the men that they did not and kept walking. The two men followed the Webbers, demanding several times that they empty their pockets. The Webbers continued walking, and the two men started shooting at them. Jonathan sustained wounds to his leg, wrist, and the left side of his back, but survived. Chica died. The autopsy of Chica's body revealed that she had been shot three times in the head—twice by a .22 revolver and once by a 9 mm handgun. Jonathan and another witness, Wayne Washington, also testified that the shots came from two firearms. Jonathan identified Hicks in a photomontage as one of his assailants . . . .
>
> . . . .
> On April 24, 2001, the police arrested Hicks for unrelated drug dealing charges. Hicks made statements implicating himself in the Webber shootings.

*State v. Hicks*, 163 Wn.2d 477, 481-82, 181 P.3d 831 (2008) (footnotes omitted). Hicks was convicted of first degree murder with a firearm sentencing enhancement, attempted first degree murder with a firearm sentencing enhancement, and first degree unlawful possession of a firearm.

At the 2004 sentencing hearing, Hicks argued that the trial court should consider his difficult upbringing, traumatic background, and mental health issues and impose sentences at the low-end of the standard ranges. The court acknowledged that Hicks's mental health issues and background were significant factors and that they were "legitimate sentencing considerations." Clerk's Papers (CP) at 117. But it found that the "shocking" and "senseless" nature of the crimes, the resulting impact on the community's sense of security, and the danger Hicks posed to the

community "strongly outweighed" those considerations to the point the court was not "swayed by them." *Id.*

The court sentenced Hicks to 416 months for the first degree murder conviction, 240 months for the attempted first degree murder conviction, and 89 months for the first degree unlawful possession of a firearm conviction. It also imposed two 60-month firearm sentencing enhancements. The court ran the first degree murder sentence, the attempted first degree murder sentence, and the two firearm enhancements consecutively. It ran the first degree unlawful possession of a firearm sentence concurrent to the murder and attempted murder sentences. The total term of confinement was 776 months.

## II. APPEAL, PERSONAL RESTRAINT PETITIONS, AND REMAND FOR RESENTENCING

Hicks appealed his convictions. In 2008, our supreme court affirmed. *Hicks*, 163 Wn.2d at 494. In 2009, Hicks filed a personal restraint petition (PRP) that we dismissed. Order Dismissing Petition, *In re Pers. Restraint of Hicks*, No. 39310-7-II (Wash. Ct. App. Dec. 8, 2015).

Hicks filed a second PRP in 2018. *In re Pers. Restraint of Hicks*, No. 51831-7-II (Wash. Ct. App. Dec. 18, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2051831-7-II%20Unpublished%20Opinion.pdf. This time, Hicks argued, and the State conceded, that the trial court had applied incorrect sentencing ranges and used incorrect offender scores when determining the sentences for the first degree murder and attempted first degree murder convictions. *In re Hicks*, No. 51831-7-II, slip op. at 2-3. We accepted the State's concession that Hicks was "entitled to be resentenced under [*State v. Weatherwax*, 188 Wn.2d 139, 156, 392 P.3d 1054 (2017)]."[2] *Id.*

---

[2] *Weatherwax* addressed the calculation of offender scores and standard ranges for multiple current offenses that include two serious violent offenses when the two serious violent offenses share the same seriousness level but one of the offenses is an anticipatory offense. 188 Wn.2d at 142-44.

at 3. Accordingly, we granted the petition, and "remand[ed] his judgment and sentence for resentencing." *Id.*

### III. RESENTENCING

At the resentencing hearing, the parties agreed that the court needed to resentence Hicks under the corrected offender scores and sentencing ranges. The State asked the court to sentence Hicks to the high end of the sentencing range for each offense. It requested that the court run the first degree murder and attempted first degree murder sentences consecutively and the first degree unlawful possession of a firearm concurrently, which would result in a new total base sentence of 632 months. It further requested that the court run the two firearm sentencing enhancements consecutive to each other and to the first degree murder and attempted first degree murder sentences. The new total term of confinement the State requested was 752 months, 24 months less than the original total term of confinement.

Hicks asked the court to consider a downward departure[3] based on his immaturity and youthfulness at the time of the crimes, his "fractured upbringing," his mental health issues, and his "positive development since the offense and the age of twenty." CP at 30. Hicks argued that even though he was over 18 when he committed the crimes, the court could consider these mitigating factors under *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), *State v.*

---

[3] Specifically, Hicks requested concurrent sentences of 240 months for the first degree murder conviction, 234 months for the attempted first degree murder conviction, and 67 months for the unlawful possession of a firearm conviction, for a new base sentence of 240 months. He further requested that the two 60-month firearm sentencing enhancements run concurrent to each other but consecutive to the substantive offenses, for a total term of confinement of 300 months, or 25 years.

*Gilbert*, 193 Wn.2d 169, 438 P.3d 133 (2019), and *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015).

In support of his request for a mitigated sentence, Hicks presented the court with a declaration from Robert Halon, Ph.D., discussing Hicks's "shattered and unstable childhood" which, which Hicks asserted had "retarded his maturation." CP at 36. In this declaration, Dr. Halon described the recent scientific understanding of brain growth and development in terms of both the brain's neurological maturation and the external factors that influence brain development. Dr. Halon also described the numerous biological factors (such as family history of addiction and mental health issues, the possibility that Hicks suffered from fetal alcohol syndrome, and possible issues with his birth) and the numerous sociological/experiential factors (such as a history of severe neglect and abuse and extraordinary traumatic experiences that Hicks suffered as a child) that could have influenced Hicks's brain maturation and development.

Additionally, Dr. Halon described Hicks's history of escalating delinquent or criminal behavior starting in the sixth grade. Dr. Halon stated that Hicks had been diagnosed with posttraumatic stress disorder and explosive intermittent disorder during evaluations conducted in 2003 to investigate the possibility of a not guilty by reason of insanity plea. Dr. Halon noted that these diagnoses led to Hicks obtaining therapy and mental health treatment while in prison that had since enabled Hicks to recognize and take responsibility for his crimes and to "improve[e] his coping methods and maturity." *Id.* at 52. Dr. Halon also commented on Hicks's continuing maturation, growth, and development during his incarceration.

Dr. Halon concluded his declaration with the following statement,

> Hicks'[s] background reveals fundamental early life experiences that deterred, prevented and delayed development of maturity in the areas of

> understanding, anticipating and assessing risks and consequences, impulse control, pro-social behavior and resistance to peer pressure. Mr. Hicks is a classic example of a man who, because of destructive family and environmental conditions in his developmental and later adolescent years, lacked normally developing neurological maturity, conscience-morality, the ability to control his emotions and to identify, anticipate and negotiate consequences and make reasoned decisions; that is, maturation that 17 years of formal and informal remedial experiences and a close partner relationship now makes possible.

*Id.* at 53 (emphasis omitted).

Hicks also presented written statements from his family members and friends describing how Hicks had matured and changed and was now a positive influence in their lives, and describing his lack of stability as a child.[4]

The State responded that because Hicks was 20 years old when he committed the crimes and not a juvenile, the court did not have "unfettered discretion" when imposing the sentence. Verbatim Report of Proceedings (VRP) at 22. The State argued that the sentence Hicks requested required the court to find mitigating circumstances and that Hicks had not established such circumstances. The State contended that the court had "nothing before" it that established that Hicks "was significantly impaired in his capacity to appreciate the wrongfulness of his conduct and to conform to the law." *Id.* at 25.

After hearing argument, the court discussed "the facts of the crime[s]" and characterized the crimes as "very heinous, callous, and selfless (sic)." *Id.* at 38. The court then stated,

> No doubt you had a difficult childhood. *I reviewed everything that was presented to this Court*. And you did spend much of your childhood and your youth in the dependency system. I read it all.

---

[4] Hicks did not include an affidavit or statement from himself addressing whether he understood the wrongfulness of his actions or whether he lacked the ability to conform to the law at the time he committed the crimes.

You gained a significant amount of maturity, though, during these past 17 years in prison. And you've had counseling and therapy, and you serve as a mentor to other prisoners. And now you even have a wife and a young child.

But you were 20 years and five months old at the time you committed the murder of Ms. Webber and the attempted murder of Mr. Webber. So *Houston-Sconiers*[5] drew the line at age 18 for the Court to have pretty much unfettered discretion with sentencing for youthful offenders.

After 18, the Court is very constrained, and *departures from that standard sentencing range must be limited to exceptional circumstances where the defendant did not know his behavior was wrong or he was significantly impaired in controlling his behavior.*

*I'm finding that there's absolutely no support for these conclusions, and the Court is denying your request for an exceptional sentence downward.*

Yes, you were in the dependency and foster care system. Yes, your parents let you down. Every child should have a good childhood. No, it was not easy for you. So *I am considering your circumstances*, sir. I am considering.

*I'm also considering that you were 20 years and five months old, but you knew right from wrong when you were committing those crimes.*

You had a lengthy criminal history prior to March 22, 2001. You had nine felonies; you had four misdemeanors in 12 criminal cases. Seven were for theft-related offenses so *you were very familiar with the justice system and knew fully the consequences of committing criminal acts.*

Again, you told Jonathan to empty his pockets or he was going to die. But [C]hica died. And Jonathan, as you've heard, continues to have significant problems . . . .

So I am sentencing you to the high end of the new sentencing range for the murder first degree. I'm sentencing you to 320 months. I'm also sentencing you to the 60 months for the firearm sentencing enhancement.

For the attempted murder, *I am acknowledging that you have had rehabilitative efforts while in prison and that you are working hard towards rehabilitation and to help others, and I think that that is commendable.* I am taking

---

[5] *State v. Houston-Sconiers*, 188 Wn.2d 1, 9, 391 P.3d 409 (2017) (courts sentencing juveniles have the discretion to impose any sentence below the standard range and enhancements and must take the defendant's age into account at sentencing).

24 months off of the high end -- the highest end of count two, the attempted murder first degree. I'm giving you 288 months, again, with 60 months for the firearm sentence enhancement.

So the base counts are to run consecutive, not concurrent. Consecutive. And the firearm sentencing enhancements are also to run consecutive. So both will count 60 months for the firearm sentencing enhancements. And, again, running consecutive, not concurrent.

. . . .

As to the unlawful possession of a firearm first degree, I am adding 89 months for count three. That, however, will run concurrent with counts one and two.

. . . .

Again, it's a very difficult case. Community needs to feel safe when they're walking down the street. *And I know that there was trauma that you experienced, but there's also been a significant amount of trauma that your actions have imposed on others and we're very clear on where that is right now*.

*Id.* at 39-42 (emphasis added).

The court sentenced Hicks to 320 months on the first degree murder conviction, 288 months on the attempted first degree murder conviction, and 89 months on the first degree unlawful possession of a firearm conviction. Running the first degree murder, attempted first degree murder, and two firearm enhancements consecutively, and running the unlawful possession of a firearm sentence concurrently, resulted in a total term of confinement of 728 months.

Hicks appeals the denial of his request for an exceptional sentence.

ANALYSIS

I. DENIAL OF REQUEST FOR EXCEPTIONAL SENTENCE

Hicks argues that the resentencing court abused its discretion when it refused to grant his request for an exceptional sentence downward. Hicks argues that the court erred because it failed to meaningfully consider his youth as a possible mitigating factor.[6] We disagree.

"A defendant may appeal a standard range sentence [only] if the sentencing court failed to comply with procedural requirements of the [Sentencing Reform Act[7]] or constitutional requirements." *State v. Osman*, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006). "The court may impose a sentence outside the standard sentence range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535.[8]

Youthfulness is a mitigating factor that may justify an exceptional sentence below statutory sentencing guidelines, even when the defendant is a legal adult. *O'Dell*, 183 Wn.2d at 688-89. The court may consider whether youth diminished the defendant's capacity to "appreciate the

---

[6] The State argues that Hicks was not entitled to request a downward departure based on his youth at the resentencing hearing because the case was remanded solely for resentencing under the corrected offender scores. Thus, the State contends, Hicks's new standard-range sentence is not appealable. We disagree.

When an appellate court remands a defendant's case for only a ministerial correction, the trial court does not have discretion to conduct a full resentencing. *State v. Toney*, 149 Wn. App. 787, 792, 205 P.3d 944 (2009). But when an appellate court remands a defendant's case for resentencing, the trial court has discretion to resentence the defendant on all counts. *Id.* at 793. Here, we remanded Hicks's case for resentencing under the corrected offender scores and standard ranges, not just for a ministerial correction, and we did not limit the scope of the resentencing. *In re Hicks*, No. 51831-7-II, slip op. at 3. Accordingly, Hicks's sentence is appealable.

[7] Chapter 9.94A RCW.

[8] The legislature has amended RCW 9.94A.535 several times since the date of the offenses, but this section has not changed, so we cite to the current version of the statute.

wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law." RCW 9.94A.535(1)(e); *O'Dell*, 183 Wn.2d at 689.

"While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (emphasis omitted). When a defendant requests review of an exceptional sentence, the question is not whether we agree with the court's judgment. Rather, our review is limited to circumstances where either the court "refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997); *State v. Khanteechit*, 101 Wn. App. 137, 140, 5 P.3d 727 (2000). Impermissible bases for declining a request for an exceptional sentence include race, sex, or religion. *Garcia-Martinez*, 88 Wn. App. at 330. "A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances." *Id.* A "failure to exercise discretion is itself an abuse of discretion subject to reversal." *O'Dell*, 183 Wn.2d at 697. But, "a trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling." *Garcia-Martinez*, 88 Wn. App. at 330.

In *Grayson*, the court, rather than considering the facts of the offender's case, denied the motion for a drug offender sentencing alternative (DOSA) because the "'State no longer has money available to treat people who go through a DOSA program.'" 154 Wn.2d at 337 (emphasis omitted) (quoting Report of Proceedings at 152-53). Our supreme court held that the court's failure "to exercise any meaningful discretion in deciding whether a DOSA sentence was appropriate" was

an abuse of discretion. *Grayson*, 154 Wn.2d at 335-36. Similarly, in *O'Dell*, our supreme court determined that the court's mistaken belief that it did not have the ability to consider youth as a mitigating factor was a failure to exercise, and therefore an abuse of its discretion. 183 Wn.2d at 697.

But here, unlike in *O'Dell* and *Grayson*, the record demonstrates that the court was aware that it had the ability to consider Hicks's youth, brain development, and personal circumstances. In fact, the record shows that the court considered those factors. It acknowledged Hicks's difficult upbringing, his efforts and success at rehabilitation, and stated that it had "reviewed everything that" Hicks had presented to the court before finding that there was no basis for an exceptional sentence below the standard range. VRP at 39. The court exercised its discretion by considering the facts and concluding that no basis for an exceptional sentence existed. Accordingly, Hicks does not show that the court abused its discretion when it declined to impose the exceptional sentence.

## II. SAG

Hicks presents three additional claims in his SAG. These claims fail.

Hicks first claims that the resentencing court considered only his age and his "previous exposure to the criminal justice system" and that it did not meaningfully consider the brain science evidence demonstrating that he may have had impulse control issues and an inability to appreciate the consequences of his action. SAG at 1. Although the court did not discuss the brain science evidence in detail in its oral ruling, the court stated that it had considered all of the materials Hicks had provided. Accordingly, the record does not support this claim.

Hicks next claims that because Dr. Halon concluded that he (Hicks) endured experiences as a youth that prevented or delayed his development and the State did not refute these findings,

the court was required to order an assessment by a trained professional rather than come to its own conclusions regarding whether mitigating circumstances existed. But Hicks did not request an additional evaluation prior to resentencing, and there is nothing in the record regarding whether an additional evaluation would have assisted Hicks.

Furthermore, in *O'Dell*, our supreme court held "that despite the scientific and technical nature of the studies underlying the [decisions supporting the *O'Dell* court's decision], a defendant need not present expert testimony to establish that youth diminished his capacities for purposes of sentencing" and that "lay testimony" was all that was required. 183 Wn.2d at 697. Requiring an assessment by an expert in lieu of the court's own conclusion would be inconsistent with that holding. Accordingly, this claim has no merit.

Finally, Hicks contends that his sentence of more than 60 years violates the state constitution's prohibition of cruel punishment[9] because his sentence is the equivalent of a life sentence without "parole" based on "crimes that [he] lacked the ability to understand and comprehend the consequences of." SAG at 2-3. But the court did not find that Hicks lacked the ability to understand or comprehend the consequences of his acts. Thus, Hicks does not show that his punishment amounts to cruel punishment.

Because Hicks does not show that the resentencing court abused its discretion when it denied his request for an exceptional sentence and his SAG arguments fail, we affirm.

---

[9] Article I, section 14 of the state constitution provides: "Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted."

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, J.

SUTTON, A.C.J.