IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39056-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANE MARCUS FORSS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — A jury found Dane Forss guilty of three counts of possession of a controlled substance with intent to deliver and one count of obstructing a law enforcement officer. On appeal, he argues that he received ineffective assistance of counsel because his attorney had a conflict of interest. Specifically, he contends that his trial attorney was currently or had formerly represented a potential witness in an unrelated matter. Forss also argues that the trial court exceeded its sentencing authority on one of the counts of possession of a controlled substance with intent to deliver. The trial court sentenced Forss to 60 months of incarceration, the top end of the standard sentencing range, and 12 months of community custody. Lastly, Forss argues the victim penalty assessment (VPA) should be struck from his judgment and sentence.

We conclude that on this record, Forss has failed to demonstrate that his attorney labored under an actual conflict of interest that adversely affected her performance. We affirm Forss's sentence but remand with instructions to strike the VPA from his judgment and sentence.

## BACKGROUND

### 1. Arrest

On February 5, 2021, a Walla Walla police officer began following a vehicle associated with a suspect who had "an unconfirmed" warrant for his arrest. The officer followed the vehicle into a parking lot, where he temporarily lost sight of it. When the officer located the vehicle, it was parked and two males were standing outside of it. One of the males matched the physical description of the suspect and took off running when the officer approached. The suspected driver of the car, Skylar Glasby, denied that the runner was the suspect.

While giving chase, the officer saw that the runner had what appeared to be a small bag in his hand. Eventually the officer recognized the man fleeing as Forss, who was not the original suspect, but who also had a warrant for his arrest. When the officer caught up to Forss, he ordered Forss to stop and arrested him in front of a residence.

A few days later, the person who lived at the residence where Forss was arrested noticed a beanie in the yard that they did not recognize and called the police. Police

discovered that the beanie was filled with separate packages of various controlled substances.

Meanwhile, Forss called a friend from jail and asked about retrieving a beanie from his grandmother's house. Forss told the friend to contact his "homie" to retrieve the beanie from the ground in the front yard where he was arrested. The "homie" Forss was referring to was later identified as Glasby, one of the males at the vehicle from which Forss fled.

Forss was charged with three counts of possession of a controlled substance with intent to deliver, and one count of obstructing a law enforcement officer in Walla Walla Superior Court on October 1, 2021.

### 2. *Pretrial and Trial Proceedings*

Prior to trial, Forss's defense attorney moved to withdraw from representing him. His attorney stated that ethical rules precluded her representation of Forss, citing RPC 1.16. The attorney did not provide any other information to support the motion. The judge considered the motion to withdraw and denied the motion without explanation.

Trial commenced on June 7, 2022, with jury selection. After opening statements, the State inquired as to whether the defense would be calling Glasby to testify. The State suggested that the court would need to order that Glasby remain in jail if Forss intended to call him as a witness because he had been sentenced to a prison term the previous

week.  Forss's attorney responded that the matter had been discussed with Forss and they would not be calling Glasby as a witness.

A few moments later, the State noted that they would not be calling the fingerprint expert because Forss's fingerprints were not found on anything.  The State commented that the fingerprint evidence was inconclusive as to Glasby, and argued that inconclusive evidence of fingerprints was not admissible.  Forss's attorney responded and brought up the alleged conflict of interest:

> [FORSS'S ATTORNEY]:  Part of the reason we're not calling [Glasby] as a witness is, as the Court is aware, I represent Mr. Glasby, and I cannot essentially throw somebody else under the bus, and I don't intend to, so there wasn't going to be anything that the Defense was going to bring up that pertained to Mr. Glasby.  But it is relevant information.  It's not inconclusive as to [Forss].  It's inconclusive as to [Glasby].  [Glasby's] not the one on trial here, so—
>
> THE COURT:  That wouldn't come in, then.
>
> [FORSS'S ATTORNEY]:  Exactly, but as long as it comes in that— or that the State can get it in that the fingerprints were sent in, came back, and did not—or was excluded—or Mr. Forss was excluded as the person who had left the fingerprint, then Defense will be satisfied, but it's very relevant information.

Rep. of Proc. at 87-88.

During trial, a detective testified that Forss was excluded as the donor of the fingerprint found on the baggies.  Defense did not call the fingerprint expert or Glasby as witnesses.

### 3. *Outcome and Sentencing*

The jury convicted Forss as charged. The trial court sentenced Forss to 60 months of incarceration and 12 months of community custody on Count 2 for possession of a controlled substance with intent to deliver. The court found Forss indigent as noted on the felony judgment and sentence form. As part of his legal financial obligations (LFOs), the court imposed the VPA.

## ANALYSIS

### 1. CONFLICT OF INTEREST

Forss contends that he received ineffective assistance of counsel because his attorney labored under a conflict of interest that adversely affected her performance. Specifically, he asserts that the attorney represented Glasby and this created an actual conflict of interest that prevented her from calling Glasby or the fingerprint expert as witnesses or pointing to Glasby as a potential suspect. The State responds that Forss fails to meet his burden of showing an actual conflict of interest because Glasby was a former client on an unrelated matter, not a current client, and the ethical rules do not prohibit an attorney from taking a position against a former client so long as confidences and secrets are not divulged. We conclude that on this record, Forss has failed to show that his attorney labored under an actual conflict of interest.

Claims of ineffective assistance of counsel are reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Whether the circumstances

demonstrate a conflict of interest is also a question of law the court reviews de novo. *State v. Kitt*, 9 Wn. App. 2d 235, 243, 442 P.3d 1280 (2019).

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). The right to effective assistance of counsel includes a right to conflict-free counsel. *State v. Dhaliwal*, 150 Wn.2d 559, 566, 79 P.3d 432 (2003). To show a violation of the right, "a defendant must show that (a) defense counsel 'actively represented conflicting interests' and (b) the 'actual conflict of interest adversely affected' his performance." *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 348-49, 325 P.3d 142 (2014) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). The defendant bears the burden of showing both the actual conflict and the adverse effect. *Dhaliwal*, 150 Wn.2d at 573. If the defendant shows that a conflict of interest adversely affected his counsel's performance, he need not demonstrate prejudice. *Cuyler*, 446 U.S. at 349-50.

The Rules of Professional Conduct inform a court on whether an actual conflict exists. The rules on conflicts of interest are set forth in RPC 1.7. Under RPC 1.7(a)(1), an attorney is prohibited from representing two clients at the same time when the representations are "directly adverse." A conflict of interest also arises when there is a significant risk the attorney's ability to represent a current client is materially limited by the attorney's duties to another client or a former client. RPC 1.7(a)(2).

6

Forss contends that an actual conflict of interest existed because his trial attorney represented Glasby, a potential "other suspect" and witness, at the same time she represented Forss, and that this dual representation was directly adverse. This argument fails because there is nothing in the record to show that Glasby was a current client of Forss's trial attorney at the time of Forss's trial. Trial counsel's motion only cited RPC 1.16, which provides the procedure for withdrawal but does not provide a substantive basis for withdrawing.

As evidence of the concurrent representation, Forss points to counsel's comment at the beginning of trial. While counsel suggested that she currently represented Glasby, she did not attempt to further develop the record. There is nothing in the record related to the nature of the representation pertaining to Glasby, whether it was related to Forss's charges, and whether the representation was current or had terminated. On appeal, the State maintains that Glasby was not a current client, but rather a former client, and the attorney represented Glasby on unrelated misdemeanor charges that had resolved prior to Forss's trial. While there is no evidence to support the State's assertion, the State did not have the burden of showing that an actual conflict existed. Forss had the burden. As such, he must do more than claim that Glasby's interests as a current client were directly adverse in order to show an actual conflict of interest.

In defense of the inadequate record, Forss maintains that his attorney's motion to withdraw could not provide more information without divulging client confidences.

7

While we agree that a motion to withdraw should not divulge client confidences, the motion can still provide some information on the nature of the conflict. If this is inadequate to support the motion, then materials can be submitted under seal.

"A trial court has a duty to determine whether an actual conflict exists before it may grant a motion to withdraw and substitute counsel." *State v. Vicuna*, 119 Wn. App. 26, 30, 79 P.3d 1 (2003). The court cannot simply rely on counsel's representations that a conflict exists. *Id*. at 33. General information, such as whether the witness is a current or former client, whether the interests are directly adverse, or whether an attorney's ability to represent a current client is limited by confidential information obtained during representation of a former client, is not confidential. *See id*. We note that Forss has no concerns asserting the nature of the relationship on appeal. Assuming that the attorney's representation of Glasby was the basis for the motion to withdraw, we see no reason that Forss's trial attorney could not provide more information about the conflict to the trial court.

Forss contends that even if Glasby was a former client of his trial attorney, a conflict of interest still existed. In support, he cites RPC 1.9 and *State v. Kitt*, 9 Wn. App. 2d 235. As noted above, a conflict of interest exists if an attorney's ability to represent a current client is materially limited by the attorney's duties to a former client. RPC 1.7(a)(2). An attorney's responsibilities to a former client are set forth in RPC 1.9. Specifically, RPC 1.9(a) prohibits an attorney from representing a client in "the same or a

substantially related matter in which that person's interests are materially adverse to the interests of the former client."  RPC 1.9(c) prohibits an attorney who formerly represented a client from "us[ing] information relating to the representation to the disadvantage of the former client" or "reveal[ing] information relating to the representation."  Forss fails to meet his burden of showing that either circumstance was present in this case.

There is nothing in the record to show that the attorney represented Glasby and Forss in matters that were the same or substantially related.  Whether matters are the same or related is a factual determination.  *Plein v. USAA Cas. Ins. Co.*, 195 Wn.2d 677, 695, 463 P.3d 728 (2020).  The comments to RPC 1.9 provide clarification.  Comment 2 states that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a *factually* distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."  RPC 1.9 (emphasis added).  Comment 3 says matters may be "substantially related" "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."  RPC 1.9.

Here, the record not only fails to identify whether counsel's motion to withdraw was based on her representation of Glasby, but the record also fails to establish that the

attorney represented Glasby in a matter that could be considered the same or substantially related to Forss's case.

Forss also fails to demonstrate that his trial attorney's representation of Forss was limited by her knowledge of confidential information gained during her representation of Glasby. In *Kitt*, this court found an actual conflict of interest existed when defense counsel informed the trial court that he had previously represented a person who was a rival gang member to his current client. 9 Wn. App. 2d at 237-38, 247. Allegations arose during the case that his former client had shot at his current client and that his current client sought revenge against the former client in a subsequent shoot out. *Id.* at 238-39. The attorney explained that he learned confidential information during his representation of the former client that would be relevant to his current client's defense, but that the attorney could not use it. *Id.* at 246. On appeal, this court held that an actual conflict of interest existed under RPC 1.9(c)(1) because the attorney's ability to represent his current client was limited by his inability to use confidential information obtained in his representation of the rival gang member to assist his current client. *Id*. at 246-47.

*Kitt* is factually distinguishable. Here, there is nothing in the record to suggest that the attorney's ability to represent Forss was limited by her knowledge of confidential information obtained during her representation of Glasby. "[P]rior representation of a witness does not automatically disqualify counsel from proceeding with representation of a defendant in a trial where that witness will testify." *Vicuna*, 119 Wn. App. at 32. Where

the current matter is not substantially related to that of a former client, and examination of

the former client does not involve confidential information, there is no actual conflict. *See*

*Id*. at 31-32. In other words, there is no general "duty of loyalty" to former clients that

would prevent an attorney from ever taking a position adverse to the former client. *See*

*Plein,*195 Wn.2d at 696.

Forss has not demonstrated that he received ineffective assistance of counsel due

to a conflict of interest.

2. SENTENCING

Forss contends the trial court exceeded its authority by sentencing him to 60

months of incarceration and 12 months of community custody on a conviction for

possession of a controlled substance with intent to deliver. We disagree. Forss was

convicted of a class B felony with a statutory maximum sentence of 120 months.

This court reviews the issue of whether a sentencing court has exceeded its

statutory authority de novo. *State v. Buck*, 2 Wn.3d 806, 812, 544 P.3d 506 (2024).

Courts may not impose a sentence that exceeds the statutory maximum term for the class

of crime for which the offender was convicted. *See* RCW 9A.20.020(1). When

calculating the statutory maximum term, both the terms of confinement and community

custody are included, and the combination of the two cannot exceed the statutory

maximum. *See State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). The SRA sets

out standard sentencing ranges based on offender score and offense seriousness, and a

court "may impose any sentence within the range it deems appropriate." RCW 9.94A.530(1). Washington courts have consistently held that the top end of the standard range under the SRA is not the same as the statutory maximum as defined by RCW 9A.20.021. *See, e.g.*, *State v. Toney,* 149 Wn. App. 787, 795-96, 205 P.3d 944 (2009) (affirming defendant's sentence under RCW 9A.20.021 even though it exceeded the high end of the standard range under the SRA); *see also State v. Bruch*, 182 Wn.2d 854, 866, 346 P.3d 724 (2015) ("Where the SRA contains an obligation to sentence within the 'statutory maximum,' it refers to the maximum sentences set forth in RCW 9A.20.021.").

Under RCW 9A.20.021(1)(b), the maximum punishment for a class B felony is "confinement in a state correctional institution for a term of ten years, or by a fine in an amount fixed by the court of twenty thousand dollars, or both." Possession of a controlled substance with intent to deliver is a class B felony. RCW 69.50.401(1), (2)(b). The standard sentencing range for someone who committed this crime with Forss's offender score is 20-60 months. RCW 9.94A.517(1), .518. "[S]tandard sentence ranges are expressed in terms of total confinement." RCW 9.94A.530(1).

Here, Forss was convicted of possession of a controlled substance with intent to deliver, a class B felony punishable by up to 10 years or 120 months in prison. The trial court sentenced Forss to a 72-month combined sentence consisting of 60 months of incarceration and 12 months of community custody. By imposing this sentence, the trial court did not exceed the statutory maximum of 120 months. Additionally, community

12

custody is not a period of confinement included in the standard sentence range. Therefore, it was within the court's discretion to sentence Forss to 60 months of incarceration, even though this was the top end of the standard sentence range, and to an additional 12 months of community custody.

3.   VPA

Forss contends that pursuant to recently enacted legislation, the VPA should be struck from his judgment and sentence because the trial court found him indigent. The State concedes, claiming that this court should remand so the VPA may be struck. We accept the State's concession.

Under former RCW 7.68.035(1), a trial court was required to impose the $500 VPA for one or more felony or gross misdemeanor convictions. However, earlier last year, this statute was amended. *See* LAWS OF 2023, ch. 449, § 1. Effective July 1, 2023, this amendment included a provision that instructs a court not to impose the VPA if the defendant is found indigent as defined by RCW 10.01.160(3); RCW 7.68.035(4). Likewise, the amendment also requires trial courts to waive any VPA imposed prior to July 1, 2023, if the offender is indigent, on the offender's motion. RCW 7.68.035(5)(b). The amendment applies to cases pending on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

Here, the trial court imposed the $500 VPA at sentencing and noted Forss's indigency on the standard felony judgment and sentence form. Clerk's Papers at 45, 54.

13

Because Forss was indigent at the time of his sentencing, the VPA should be struck from his judgment and sentence. Although the amendment was not in effect at the time of his sentencing, it applies to Forss because his case is on direct appeal.

The VPA should be struck from Forss's judgment and sentence.

Affirmed with instructions to remand and strike the VPA from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.

14