IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROBERT SYDOW, an individual, | ) | |
| | ) | No. 38888-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DOUGLASS PROPERTIES LLC, a | ) | |
| Washington limited liability company, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — Robert Sydow appeals the superior court's denial of his request

for a preliminary injunction that would preclude his neighbor Douglass Properties, LLC

from intruding on land that Sydow claims by adverse possession. We questioned the

appealability of the denial of the preliminary injunction and requested the parties respond

to the question. Sydow, in addition to claiming a right to appeal, responded by seeking

discretionary review of the superior court's ruling. We hold that the rejection of the

temporary injunction is not appealable, and we deny discretionary review because the

denial does not impact the status quo or render further proceedings useless.

FACTS

This lawsuit would be a typical adverse possession suit except for bold action by

the title owner to the land, Douglass Properties, in reasserting rights to the land. We

begin with the history of the two parcels of land now owned respectively by neighbors Robert Sydow and Douglass Properties.

In the 1930s, Robert Sydow's grandmother purchased an 80-acre parcel in Spokane County. The purchase included each of the parcels now owned by Sydow and Douglass Properties. Sydow grew up on the 80-acre tract of land. At some unknown date, Medar Properties Washington, LLC (Medar Properties), of which Sydow was a member from 2004 to 2009, took ownership of the 80-acre parcel. In 2006, Sydow's mother "gifted" him the family home located on the land, although Medar Properties still owned the land. Clerk's Papers (CP) at 4. That same year, Sydow built a chain link fence on the northern border of that part of the parcel deemed part of the family home, although Medar Properties continued to own land north of the fence. He posted "Private Property, No Trespassing" signs on the fence. CP at 5. Sydow maintained this fence, along with family memorials, animal habitats, and game cameras located on the southern side of the fence throughout Medar Properties' and his later ownership of the property.

In 2008, Medar Properties divided the 80-acre parcel into two separate lots. Medar Properties quitclaimed the southern parcel to Sydow and quitclaimed the northern parcel to itself. Medar Properties hired a surveyor, who set corner markers for the segregated parcels and filed a survey for the two separated parcels. Unbeknownst to Medar Properties, if not Robert Sydow, the surveyed boundary line did not coincide with

Sydow's fence. The fence lay fifty feet north of the property line. We label the fifty-foot slice of land between the fence and the true boundary as the "disputed territory."

In 2009, Medar Properties sold the northern parcel to Star Saylor Investments, LLC, who sold the parcel to Douglass Properties in 2018. Prior to purchasing the northern parcel, Douglass Properties hired Whipple Consulting Engineers, Inc. to locate monuments identified in prior surveys and to confirm the corner monuments of the southern and northern parcels. After conducting its own survey on December 3, 2017 and reviewing earlier surveys conducted on the property in 2008 and 2009, Whipple discovered that one of the monuments had been moved fifty feet north from the location identified in the 2008 and 2009 surveys. Whipple theorized that someone moved the monument to align with Sydow's fence. Despite learning of the moving of the monument, Douglass Properties purchased the northern parcel on March 1, 2018.

On December 8, 2020, Douglass Properties razed objects and vegetation within the disputed territory. Douglass Properties leveled Robert Sydow's chain link fence and flattened trees that served as memorials for deceased members of Sydow's family.

Douglass Properties intends to build parking garages for its apartment complex in the disputed territory. We do not know the extent to which Douglass Properties has begun physical development of the garages. Douglass Properties currently stores topsoil in the disputed territory.

PROCEDURE

On August 2, 2021, Robert Sydow filed a complaint that alleges trespass, timber trespass, negligence, quiet title, ejectment, and negligent infliction of emotional distress. In the complaint, Sydow asserts ownership over the disputed territory through adverse possession. He contends the statutory period of adverse possession began to run when he erected the fence in 2006. The complaint does not expressly pursue either a permanent or preliminary injunction. The complaint's prayer for relief seeks quiet title, noneconomic damages, and treble damages for the trespass.

On September 3, 2021, Robert Sydow filed a motion for a preliminary injunction to prevent Douglass Properties from further destroying the disputed territory. In response, Douglass Properties asserted that granting of a preliminary injunction would halt further development on the northern parcel and cause it a loss of $2,074,000.00.

On December 3, 2021, the superior court denied the request for a preliminary injunction. The court concluded that Robert Sydow lacked a clear legal right to the land because the legal descriptions of the two parcels have never changed and the descriptions coincide with Douglass Properties' stated position on the boundary between the two parcels. The superior court determined that Sydow will likely lose on the merits of his adverse possession claim because he will not satisfy the adverse possession's open, notorious, and hostile elements.

On December 13, 2021, Robert Sydow filed a motion for reconsideration. In denying the motion, the superior court wrote that equitable estoppel would also likely defeat Sydow's assertion of adverse possession because Medar Properties, of which he was a member, represented the correct boundary line in the 2008 and 2009 recorded surveys. According to the superior court, the common grantor doctrine would also bar Sydow's claim for adverse possession.

LAW AND ANALYSIS

Appealability

We address separately Robert Sydow's notice of appeal and his alternative request for discretionary review. We first ask if the superior court's denial of the preliminary injunction is appealable.

RAP 2.2 outlines the circumstances in which a party may appeal as a matter of right:

> (a) Generally. Unless otherwise prohibited by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions:
> (1) *Final Judgment*. The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs.
> . . . .
> (3) *Decision Determining Action*. Any written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action.

(Boldface omitted.) A "final judgment on the merits" is a court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs and enforcement of the judgment. *State v. Taylor*, 150 Wn.2d 599, 602, 80 P.3d 605 (2003).

Robert Sydow concedes that Washington state law does not permit an appeal of an order denying a preliminary injunction as a matter of right. Nevertheless, he urges this court to adopt the federal practice of allowing such orders to be appealed. Nevertheless, Washington appellate courts, particularly intermediate appellate courts, do not amend court rules by opinion. A change in the Rules of Appellate Procedure mandates the normal rule making process, not the overruling of precedent. *In re Detention of McHatton*, 197 Wn.2d 565, 572-73, 485 P.3d 322 (2021). We conclude that Sydow cannot appeal the denial of his request for a preliminary injunction as a matter of right.

Discretionary Review

We move to Robert Sydow's tardy request for discretionary review. Although Sydow only filed a notice of appeal, the second sentence of RAP 5.1(c) reads:

> A notice of appeal of a decision which is not appealable will be given the same effect as a notice for discretionary review.

In turn, RAP 2.3 declares:

> (a) Decision of Superior Court. Unless otherwise prohibited by statute or court rule, a party may seek discretionary review of any act of the superior court not appealable as a matter of right.

6

(b) Considerations Governing Acceptance of Review.  Except as
provided in section (d), discretionary review may be accepted only in the
following circumstances:
(1) The superior court has committed an obvious error which would
render further proceedings useless;
(2) The superior court has committed probable error and the decision
of the superior court substantially alters the status quo or substantially
limits the freedom of a party to act.

(Boldface omitted.)  Robert Sydow relies on both subsections 1 and 2 of RAP 2.3.

The party seeking discretionary review may do so under limited circumstances and must overcome a heavy burden to establish a basis for that review.  *In re Dependency of Grove*, 127 Wn.2d 221, 235, 897 P.2d 1252 (1995); *State v. Hecth*, 2 Wn. App. 2d 359, 363, 409 P.3d 1446 (2018).  The law does not favor discretionary review because it lends itself to piecemeal and multiple appeals.  *Right-Price Recreation, LLC v. Connells Prairie Community Council*, 146 Wn. App. 370, 380, 46 P.3d 780 (2002).

When asking for application of RAP 2.3(b)(1), Robert Sydow contends that the superior court committed obvious error that renders "much, if not all," of the further proceedings in the lawsuit useless.  Appellant's Supplemental Brief Re: Appealability and Discretionary Review at 4.  We read the rule as requiring that all proceedings, not simply much of the proceedings, be rendered useless.

Robert Sydow asserts that Douglass Properties continues to actively build a garage on the disputed territory to accommodate the apartment complex.  Sydow also worries that Douglass Properties will continue its invasion inside the disputed territory and

further destroy family memorials.  Sydow contends further incursions renders moot

"much" of his underlying causes of action.  We disagree.

Regardless of the number of sorties into the disputed territory, Robert Sydow's

causes of action remain viable.  Sydow seeks quiet title to the land and damages for the

trespass.  If anything, further destruction strengthens the claims for damages.

We move to RAP 2.3(b)(2), which encourages discretionary review when the

court commits probable error, which substantially alters the status quo or substantially

limits a party's freedom to act.  RAP 2.3(b)(2).  We focus on the second prong of

RAP 2.3(b)(2) rather than addressing probable error.  Drafters of RAP 2.3(b)(2) intended

the subsection to apply to injunctions.  *State v. Howland*, 180 Wn. App. 196, 206-207,

321 P.3d 196 (2014).

Washington courts have written that probable error alters the status quo if it has an

immediate effect outside the courtroom and does not merely alter the status of the

litigation itself.  *In re Dependency of N.G.*, 199 Wn.2d 588, 590, 510 P.3d 335 (2022);

*State v. Howland*, 180 Wn. App. 196, 207 (2014).  In *State v. Howland*, this court

introduced to Washington decisions the concept of "immediate effect outside the

courtroom."  *State v. Howland*, 180 Wn. App. 196, 207 (2014).  We relied on former

Supreme Court Commissioner Geoffrey Crooks promotion of this test because nearly all,

if not all, denials or grants of preliminary injunctions impact the status quo of the

proceedings.  Geoffrey Crooks, *Discretionary Review of Trial Court Decisions under the*

8

*Washington Rules of Appellate Procedure*, 61 Wash. L. Rev., 1541, 1545-46. (1986) (quoting RAP 2.3 cmt. b). We also reasoned that allowing discretionary review when a ruling impacts the status quo in the context of court proceedings defeats the policy of limiting the number of grants of discretionary review.

The majority of the Washington Supreme Court in *Dependency of N.G* did not state whether it adopted the test of impact outside the courtroom because it found that the superior court's ruling did not substantially alter the status quo in the proceeding. A minority of the Washington Supreme Court in *Dependency of N.G.* emphasized that subsection (2) of RAP 2.3(b) does not insert the language "outside of the litigation," although the minority agreed that the status quo was not changed in the context of the lawsuit.

Because of the sound reasoning employed in *State v. Howland*, we follow the rule that the petitioner for discretionary review must show an impact on the status quo outside the courtroom. We also question whether Robert Sydow shows any impact inside the course of the proceeding.

Robert Sydow contends that the superior court's denial of the preliminary injunction allows Douglass Properties to "continue" its invasion into his land. We emphasize Sydow's use of the word "continue" because the word concedes that Douglass Properties already purportedly trespassed and will probably continue to trespass. Therefore, the denial of the injunction did not change current events. Any probable error

had no immediate effect outside the courtroom. Additionally, neither party's freedom to act is limited by any error.

Although we do not applaud if Robert Sydow prevails on his adverse possession cause of action. We also note that Sydow may be free to tear down Douglass Properties' improvements, but at risk of being liable if he loses his adverse possession claim. Truce negotiations may be in order.

CONCLUSION

We hold that Robert Sydow has no right to appeal the superior court's denial of its motion for a preliminary injunction. We also deny Sydow's request for discretionary review of the order of denial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Staab, J.

10